IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ESPARZA, on behalf of herself, and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SMARTPAY LEASING, INC.,<br><br>    Defendant.<br>                                      / | No. C 17-03421 WHA<br><br>**ORDER RE MOTION FOR CLASS CERTIFICATION** |

**INTRODUCTION**

In this putative class action for alleged violations of the Telephone Consumer Protection Act, plaintiff moves for class certification. For the reasons explained below, the motion is **GRANTED IN PART AND DENIED IN PART**. This order certifies one class, appoints the named plaintiff as class representative, and appoints plaintiff's counsel of record as class counsel.

**STATEMENT**

Plaintiff Shawn Esparza brings this putative class action against defendant SmartPay Leasing, Inc., asserting two claims for negligent and willful violations of the Telephone Consumer Protection Act. Plaintiff alleges that after she terminated her lease of a mobile phone from SmartPay, she continued to receive promotional text messages on a completely different phone. As part of its efforts to retain customers, SmartPay allegedly sent text messages to inactive customers such as plaintiff to encourage them to enter into a new lease. These messages continued even after plaintiff requested that SmartPay stop sending them. SmartPay

later learned that a coding error in its platform prevented individuals from opting out of receiving SmartPay's texts (Lai Depo. 153:16–22, 203:16–204:9). Based on these allegations, plaintiff seeks to certify two classes pursuant to FRCP 23(b)(3):

> <u>Re-Engagement Text Message Class</u>: All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform, (iv) from September 29, 2015 to the date of class certification, (v) where the text message began with content stating "Congrats. You're pre-qualified for a SmartPay lease" (the "Re-Engagement Text Message").
>
> <u>"STOP" Text Message Class</u>: All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

SmartPay opposes class certification. Following full briefing and oral argument on the instant motion, an order stayed this action pending resolution of SmartPay's appeal of an October 2017 order denying its motion to compel arbitration. Our court of appeals has since resolved SmartPay's appeal and affirmed the denial of SmartPay's motion (Dkt. Nos. 77, 82, 87). The stay in this action is accordingly lifted and, to the extent stated below, this action will proceed as a class action.

## ANALYSIS

Federal Rule of Civil Procedure 23(a) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FRCP 23(b) sets forth three conditions under which, if the prerequisites of FRCP 23(a) are satisfied, a class action may be maintained. Class certification is appropriate if a plaintiff meets all the prerequisites of FRCP 23(a) and at least one condition of FRCP 23(b). *Abdullah v. United States Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013).

### 1. PROPOSED CLASS AND THE TCPA.

The gravamen of plaintiff's complaint is that SmartPay violated the TCPA by sending her certain text messages on her cellular phone. To prevail under the TCPA, plaintiff will need to establish that SmartPay: (i) "made" text message calls; (ii) using an automatic telephone dialing system; (iii) without prior express consent. 47 U.S.C. § 227(b)(1). As to the third element, consent is an affirmative defense on which SmartPay bears the burden of proof. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). The type of consent required depends on the content of the message. If the text message "includes or introduces an advertisement or constitutes telemarketing," the sender must have obtained, prior to sending the message, the recipient's signature in a written agreement that includes specified disclosures. 47 C.F.R. at §§ 64.1200(a)(1), (f)(8). If the text message does not contain advertising and is not telemarketing, a consumer need only "knowingly" agree to receive such messages by providing his phone number for the reasons served by the message (*i.e.*, to transact the business contemplated when the recipient provided his number). *See Van Patten*, 847 F.3d at 1044–45.

Plaintiff seeks to certify two classes which differ from the putative class alleged in her complaint. In contrast to the above-defined classes, in her complaint plaintiff purported to represent the following individuals (Compl. ¶ 37):

> [A]ll persons within the United States who received any unsolicited, promotional text message from Defendant or its agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3), which text messages by Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint through the date of final approval.

Courts in this district have disagreed as to whether or not a plaintiff may seek to certify a class other than the one defined in the complaint, although some have considered motions to certify a newly-defined class so long as the modifications narrow the class proposed in the complaint. *Compare In Berlowitz v. Nob Hill Masonic Mgmt., Inc.*, No. 96-cv-01241, 1996 WL 724776 (N.D. Cal. Dec. 6, 1996) (Judge Marilyn Hall Patel), *with In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590–91 (N.D. Cal. 2010) (Judge Susan Illston). Here,

plaintiff's amendments to the proposed class definition do not expand the class alleged in the complaint. Nor has SmartPay articulated any prejudice resulting from the proposed change. This order will accordingly proceed to address plaintiff's motion for class certification on the merits.

**2. COMMONALITY AND PREDOMINANCE.**

A class has sufficient commonality under FRCP 23(a)(2) if "there are questions of law or fact common to the class." This is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotation marks and citation omitted). In contrast to the less stringent standard of FRCP 23(a)(2), class certification under FRCP 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all class members in a single adjudication. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Plaintiff contends that predominant common questions will include (1) whether SmartPay used an automatic telephone dialing system to send text messages, (2) whether the "re-engagement text" sent to inactive customers constitutes an "advertisement" under the TCPA, (3) whether, due to a coding error, SmartPay systemically sent text messages to individuals who attempted to opt-out of receiving SmartPay's messages, and (4) whether SmartPay can establish a prior express consent defense. SmartPay, in turn, raises several arguments as to why resolution of plaintiff's claims would require individualized factual determinations that defeat predominance.

Commonality is easily satisfied here. Common legal and factual issues will include whether or not SmartPay used an automatic telephone dialing system to send text messages, whether or not the "re-engagement text" sent to inactive customers constitutes an "advertisement" under the TCPA, and whether, due to a coding error, SmartPay systemically sent text messages to individuals who attempted to opt-out of receiving messages from SmartPay by texting the word "STOP." Although SmartPay contends that commonality is

4

lacking because it may have sent text messages to phone numbers which were reassigned from a customer to a non-customer by the time the allegedly unlawful text message was sent, SmartPay wholly fails to explain how this distinction is relevant to the commonality inquiry (or to plaintiff's claims generally), as the proposed class definitions do not distinguish between customers and non-customers. SmartPay also argues that plaintiff has the burden at class certification to prove that it sent text messages "without the recipient's prior express consent." To the contrary, at this stage, the issue is only whether the affirmative defense of prior express consent can be adjudicated on a class-wide basis.[1]

As to predominance, SmartPay argues that whether or not each putative class member consented to receive its messages raises individualized questions. To a certain extent, SmartPay is correct. According to SmartPay, customers consented to receive promotional text messages when they signed up for its services. Importantly, putative class members signed up in one of two ways — either at a brick-and-mortar store such as Verizon or through SmartPay's website. For customers who leased a phone at a store, SmartPay had a policy requiring sales associates to display certain information to customers during the application process, including SmartPay's terms of use which contain a consent clause. Sales associates were also directed to have customers check a "sign here" box indicating that they agreed to the terms of use. The record suggests, however, that this policy was not uniformly enforced and that the disclosures actually shown to customers varied. Indeed, plaintiff herself claims that a salesperson completed her application for her. She further opines, based on her experience with SmartPay, that it would be "virtually impossible" for a customer to "actually review" SmartPay's terms of use. Plaintiff proposes no common method of proof for establishing when customers, like plaintiff, were not shown the disclosures that SmartPay has a policy of showing. In light of this lack of uniformity in the enrollment process, the question of consent cannot be answered on a classwide basis for individuals who enrolled at a wireless carrier's store. Instead, it would require an individual

---

[1] To the extent SmartPay argues it cannot identify class members because it does not have the contact information for such individuals, this order disagrees. SmartPay does not dispute that it can identify each text message sent by historical address and phone number. The parties can use tools such as telephone carrier records or a reverse lookup services to identify the user of a phone number at the time the text message was sent (Supp. Hansen Decl. ¶¶ 2, 4).

5

assessment of what each customer was told and subsequently agreed to.

Consumers who signed up for SmartPay through its website, by contrast, all encountered a uniform enrollment process. While the parties dispute certain elements of this process — for example, whether the terms of use are presented to customers in a link connected to a "continue" button or a "sign here" button — this does not defeat predominance. Whether SmartPay's enrollment process does, in fact, bind customers to its terms of use and satisfy the TCPA's prior consent requirement need not be resolved on the instant motion. Either way, SmartPay's consent defense will not require a one-by-one inquiry. Rather, it will only requires general testimony about SmartPay's uniform practices and procedures in presenting putative class members with its terms of use online. Although SmartPay summarily argues that individualized issues exist because some customers may have agreed to the terms of use without reading them, it cites no authority to suggest to a customer's declination to read an agreement before signing it would render it unenforceable. Accordingly, with respect to the Re-Engagement Text Message Class, predominance is only met as to those putative class members who signed up for SmartPay's services online. As explained below, however, plaintiff's claims are not typical of such individuals.

Turning now to the "STOP" Text Message Subclass, the issue of consent does not raise individualized questions that would predominate. The proposed subclass is defined such that it only includes individuals who, through a specific and clear opt-out request, revoked any previously-given prior express consent to receive SmartPay's text messages. SmartPay's arguments against predominance as to the subclass fail. SmartPay first argues that some of its text messages may have gone to "wrong numbers" and that the recipient of the text message was therefore never a SmartPay customer. SmartPay fails to explain, however, why this would be relevant to plaintiff's claims. SmartPay next speculates that some members of the class may lack standing if they never *received* the text message that SmartPay *sent*. As far as the record demonstrates, however, this point is mere speculation. Nothing in the record suggests that cell phone owners did not receive the text messages that SmartPay sent. To the extent set forth

above, predominance is demonstrated.²

### 3. TYPICALITY.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[ ], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotations omitted).

Plaintiff's claims are not typical of the Re-Engagement Text Message Class. As set forth above, Rule 23(b)(3)'s predominance requirement necessitates a narrowing of plaintiff's proposed class to include only those individuals who signed up for SmartPay's services online. As to those individuals, plaintiff's theory of liability is that SmartPay's form of consent is not clear and conspicuous because its terms of use are presented via a hyperlink during the enrollment process. Plaintiff herself, however, claims that she never received SmartPay's disclosures because the sales associate failed to have her review the terms of use as required under SmartPay's policy.

As to the "STOP" Text Message Subclass, however, plaintiff's claims arise from the same course of conduct and are premised on the same legal theories. Plaintiff's claims are therefore typical. Citing *Lanteri v. Credit Protection Association L.P.*, No. 13-cv-01501, 2017 WL 3621299 (S.D. Ind. Aug. 22, 2017) (Judge William Lawrence), SmartPay argues that plaintiff's claims are not typical of the "STOP" subclass because while plaintiff texted the word "STOP" in an attempt to opt-out of receiving text messages, others may have used variants such as "quit" or "unsubscribe." In *Lanteri*, the plaintiff's proposed class definition included individuals who sent one of six messages in response to the defendant's texts. The plaintiff,

---

² SmartPay also summarily argues that predominance is lacking because only the "regular user" of a cellular phone can succeed on a TCPA claim, and an individualized inquiry is necessary to determine who the "regular user" of each telephone number is. Equally speculative is SmartPay's argument that "[t]here may also be individual issues raised regarding whether recipients of text messages who have filed for bankruptcy protection have standing to pursue their claims" (Opp. at 25 n. 23). Because courts do not consider defenses that a defendant "might advance or for which it has presented no evidence," *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018), these arguments do not defeat class certification.

7

however, did not send one of the six text messages listed in the class definition and none of the six messages listed in the class definition complied perfectly with the opt-out instruction sent by the defendant. *Id.* at *3. The district court accordingly concluded that because "it [was] not clear that each of the messages revoked consent, the Plaintiff's claim and the claims of the individuals who sent each of the six text messages [were] distinct from one another and [did] not have the same essential characteristics." *Id.* at *4. Here, by contrast, the proposed subclass is defined to include only those who sent SmartPay the word "STOP," which is specifically what SmartPay instructed text message recipients to do if they wished to cease further messages, and which is also exactly what plaintiff herself sent to SmartPay in an effort to prevent further text messages. *Lanteri* is therefore inapposite.

### 4. NUMEROSITY.

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). That requirement is met here. In direct response to attempts to opt-out of receiving text messages, SmartPay sent automated text messages to 22,578 unique telephone numbers during the putative class period (Hansen Decl. ¶ 14). SmartPay argues that this is insufficient to demonstrate numerosity for two reasons. Neither has merit.

*First*, SmartPay argues that even if it *sent* text messages to 22,578 unique phone numbers, some of those cellular phones may not have *received* the messages. Accordingly, SmartPay argues, plaintiff has failed to show that numerosity has been met. As far as the record shows, however, this is merely semantics. SmartPay offers nothing more than speculation that any unsuccessful transmissions of its text messages occurred, let alone the tens of thousands of unsuccessful transitions that would be needed to defeat numerosity in this case.

*Second*, SmartPay argues in a footnote that the 22,578 phone numbers identified by plaintiff includes not only customers who were sent text messages in response to sending SmartPay the word "STOP," but also includes people who were sent additional text messages after responding with certain other terms that SmartPay designated as an opt-out request. Accordingly, SmartPay argues, there is no evidence as to the precise number of people who were sent a text message after opting-out using only the word "STOP," as the subclass is

8

currently defined. Again, SmartPay' speculation that this would reduce the 22,578 phone numbers at issue to less than 40 cannot defeat class certification. Numerosity has been demonstrated.

### 5. ADEQUACY.

A proposed class representative is adequate if they "will fairly and adequately protect the interests of the class." FRCP 23(a)(4). Our court of appeals has explained that a representative meets this standard if they (1) have no conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). SmartPay challenges the adequacy of both plaintiff and her counsel.

SmartPay argues that plaintiff's counsel, Ronald Marron, Alexis Wood, and Kas Gallucci of the Law Offices of Ronald A. Marron, are inadequate because they have been appointed class counsel in only one prior TCPA case. This argument is unavailing. As the record demonstrates, plaintiff's counsel have other experience in complex class actions, including shareholder suits and false and misleading labeling claims. Moreover, this is not a particularly complicated case and there is no dispute that plaintiff's counsel have vigorously prosecuted it.

As to plaintiff, a class representative need not have "fine-grained knowledge" of her claims in order to be an adequate representative. *Akaosugi v. Benihana Nat. Corp.*, No. 11-cv-01272 WHA, 2012 WL 1657099, at *4 (N.D. Cal. May 10, 2012). This order accordingly rejects SmartPay's contention that plaintiff is an inadequate representative for lacking knowledge during her deposition of upcoming case management deadlines and mistaking her complaint for a motion. Plaintiff has satisfied the adequacy requirement of FRCP 23(a).

### 6. SUPERIORITY.

Class certification is appropriate only if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). To make this determination, courts consider the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions;

(2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3)(A)–(D).

SmartPay argues that resolution of plaintiff's claims would be derailed by individualized inquiries. These concerns have been addressed above. In light of the relatively low value of the claims at issue in this case, a single proceeding in this forum is preferable and more efficient than individual proceedings. A class action would therefore be superior to individual actions for the adjudication of plaintiff's TCPA claims.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is **GRANTED IN PART AND DENIED IN PART**. The following class is **CERTIFIED** under FRCP 23(b)(3):

> "STOP" Text Message Class: All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

This class definition shall apply for all purposes, including settlement. Shawn Esparza is **APPOINTED** as class representative and her counsel Ronald Marron, Alexis Wood, and Kas Gallucci of the Law Offices of Ronald A. Marron are hereby **APPOINTED** as class counsel. By **JUNE 21 AT NOON** counsel shall submit an agreed-on form of class notice and a plan of dissemination, including by first-class mail.

**IT IS SO ORDERED.**

Dated: June 6, 2019.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE