1

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)

2
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)

3
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)

4
*kas@consumersadvocates.com*

5
651 Arroyo Drive
San Diego, California 92103

6
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

7

8
*Class Counsel*

9

10
# UNITED STATES DISTRICT COURT

11
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| | Case No.: 17-cv-3421-WHA |
| SHAWN ESPARZA, on behalf of herself, and all others similarly situated, | **PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Plaintiff, | |
| v. | Hearing Date: September 12, 2019 |
| SMARTPAY LEASING, INC., | Hearing Time: 11:00 a.m. |
| Defendant. | Judge: Hon. William Alsup |
| | Courtroom: 12 – 19th Floor |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

On September 12, 2019 at 11:00 a.m., in Courtroom 12 – 19th Floor of the Honorable William Alsup, Plaintiff Shawn Esparza ("Plaintiff") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order as follows:

1. Preliminarily approving the Settlement Agreement between Plaintiff, Shawn Esparza and Defendant, SmartPay Leasing, Inc.

2. Approving the form of Notice of Class Action Settlement attached as Exhibits A and B to the Settlement Agreement and its dissemination to the Settlement Class by First-Class U.S. Mail; and

3. Setting a schedule for the final approval process.

This motion is made on grounds that the proposed settlement is within the necessary range of reasonableness to justify granting the preliminary approval.

This is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ronald A. Marron, the pleadings and papers on file in this action, and any oral and documentary evidence that may be presented at the hearing on the motion.


Dated: August 20, 2019             By: */s/ Ronald A. Marron*
                                   **LAW OFFICES OF RONALD A. MARRON**
                                   RONALD A. MARRON
                                   ALEXIS M. WOOD
                                   KAS L. GALLUCCI
                                   651 Arroyo Drive
                                   San Diego, California 92103
                                   Telephone: (619) 696-9006
                                   Facsimile: (619) 564-6665

                                   *Class Counsel*

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 2

    A.    Plaintiff's Allegations that SmartPay Violated the TCPA ..................... 2

    B.    History of the Litigation ......................................................................... 3

    C.    Defenses Maintained by SmartPay ........................................................ 5

III. TERMS OF THE SETTLEMENT .................................................................. 6

    A.    The Class ................................................................................................ 6

    B.    The Class Representative and Class Counsel .......................................... 7

    C.    Monetary Relief to the Member of the Class ......................................... 7

    D.    Notice to the Class .................................................................................. 7

    E.    Settlement Administrator ........................................................................ 8

    F.    Incentive Award and Attorneys' Fees .................................................... 8

    G.    Scope of Release .................................................................................... 8

IV. ARGUMENT ................................................................................................... 9

    A.    Legal Standard for Preliminary Approval of a Class Action
           Settlement .............................................................................................. 9

    B.    The Proposed Settlement is Fair, Reasonable and Adequate and Should
           be Preliminarily Approved as both Sides Face Significant Challenges
           in Litigating this Case ......................................................................... 11

    C.    The Immediate, Meaningful Cash Relief Afforded by the Settlement
           Favors Preliminary Approval. ............................................................. 12

    D.    Experienced Counsel Have Determined that the Settlement is
           Appropriate and Fair to the Class ....................................................... 15

    E.    This Court has Already Certified the Class and Appointed Plaintiff's
           Counsel as Class Counsel and Plaintiff as the Class Representative... 15

    F.    The Proposed Method of Class Notice is Appropriate ........................ 16

    G.    The Court Should Appoint Heffler Claims Group as the Claims
           Administrator ....................................................................................... 17

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H.    A Final Approval Hearing Should be Scheduled.................................17

V.  CONCLUSION.............................................................................................17

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA

PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS

ACTION SETTLEMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Bayat v. Bank of the W.*,
   No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)................... 14

*Bykov v. DC Trans. Services, Inc.*,
   No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019)................. 10

*Cabiness v. Educ. Fin. Sols., LLC*,
   No. 16-CV-01109-JST, 2019 WL 1369929 (N.D. Cal. Mar. 26, 2019)............... 14

*Campbell-Ewald Co. v. Gomez*,
   126 S. Ct. 663 (2016) ......................................................................... 2

*Charvat v. Allstate Corp.*,
   29 F. Supp. 3d 1147 (N.D. Ill. 2014) ..................................................... 2

*Etter v. Allstate Ins. Co.*,
   No. C 17-00184 WHA, 2018 WL 5761755 (N.D. Cal. May 30, 2018) ......... 12, 13

*Franklin v. Wells Fargo Bank, N.A.*,
   No. 14-cv-2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ........ 14

*Gallian v. Charter Communications, Inc.*,
   287 F. Supp. 3d 920 (C.D. Cal. 2018) ..................................................... 4

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) .............................................................. 10

*Grannan v. Alliant Law Grp., P.C.*,
   No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012).................... 15

*Gribble v. Cool Transports Inc.*,
   No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ...... 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 9

*In re Capital One TCPA Litig.*
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................................... 14

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D. N.Y. 1995) ........................................................ 10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................... 10

*Linney v. Cellular Alaska P'ship*,
   151 F. 3d 1234 (9th Cir. 1998) ............................................................ 10

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) .......................................................... 11

*Marks v. Crunch Fitness*,
   904 F.3d 1041 (9th Cir. 2018) ............................................................... 4

*Murillo v. Pacific Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) ........................................................ 10

*National Rural Tele. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 13

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................. 9

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
   303 F.R.D. 337 (E.D. Cal. 2014) ........................................................ 10

*Pimental v. Google Inc.*,
   No. 11-CV-02585-YGR, 2013 WL 12177158 (N.D. Cal. June 26, 2013) ........... 14

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009). ....................................................... 11, 15

*Esparza v. Smartpay Leasing, Inc.* CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*Franklin v. Kaypro Corp.*,
 884 F.2d 1222 (9th Cir. 1989) .............................................................................. 11

*Utility Reform Project v. Bonneville Power Admin.*,
 869 F. 2d 437 (9th Cir. 1989) ............................................................................... 10

*West Va. v. Chas. Pfizer & Co.*,
 440 F.2d 1079 (2d Cir. 1971)................................................................................. 9

*Wilkins v. HSBC Bank Nevada, N.A.*,
 No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)................................. 14

*Wright v. Nationstar Mortgage LLC*,
 No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016).......................... 14

**Statutes**

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* .......... 1, 2, 8

**Other Authorities**

4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th
 ed. 2002 and Supp. 2004) ...................................................................................... 9

5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.) ........... 9

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii) ............................................................................. 16

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### I. INTRODUCTION

Plaintiff Shawn Esparza ("Plaintiff") moves for preliminary approval of a proposed class action settlement (the "Settlement") of this action (the "Litigation"). SmartPay Leasing, Inc. ("SmartPay" or "Defendant") is a business that leases cellular phones to consumers nationwide. SmartPay retained the services of Twilio, Inc. ("Twilio") to act as a platform for SmartPay to send text messages to consumers. Plaintiff alleges that Defendant's text message activity resulted in violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* On, June 5, 2019, this Court certified a class of "All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP" (the "Class"). Defendant denies Plaintiff's allegations, however, rather than continue to litigate this case through trial, and face the uncertainties that invariably follow, Plaintiff and Defendant (collectively, the "Parties") have reached a Settlement.

The proposed Settlement – reached after substantial discovery (including numerous depositions) and motion practice, an appeal of the denial of SmartPay's motion to compel arbitration, a full-day mediation session before Judge Leo Papas, Ret. of Judicate West, and subsequent negotiations regarding the specifics of a settlement agreement – offers a robust recovery to all Class Members. Pursuant to the Settlement, SmartPay has agreed to create a $8,679,000.00 non-reversionary settlement fund, equal to $375.00 per Class Member (23,144 in the Class), which will be used to pay Class Members, the costs of the settlement administration, attorneys' fee and reasonable litigation expenses, and an incentive award to the Plaintiff, as approved by the Court (the "Settlement Fund.") The

Settlement is of the claims asserted by the Certified Class, and corollary state law claims arising from the same conduct at issue in this case and turning on the use of technology regulated under the TCPA.

Plaintiff respectfully requests that this Court (1) preliminarily approve the Settlement; and (2) approve the Notice Plan.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Allegations that SmartPay Violated the TCPA

The TCPA, enacted by Congress in 1991, combats the threat to privacy being caused by certain automated practices, stating it is unlawful:

> "(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . (iii) to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii).

Thus, the TCPA prohibits calls made with an artificial or prerecorded voice or through an automatic telephone dialing system ("ATDS"). 47 U.S.C. § 227(a)(1). "A text message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 126 S. Ct. 663, 667 (2016). For a violation, Plaintiff need only prove that SmartPay (1) placed a call using an ATDS or an artificial or prerecorded voice; (2) to a cell phone number. *Id*. at § 227(b)(1)(A)(iii). Consent is an affirmative defense for which SmartPay bears the burden of proof. *See Charvat v. Allstate Corp*., 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) ("[P]rior express consent under the TCPA is an affirmative defense on which the defendant bears the burden of proof.") (internal quotations omitted). The TCPA sets statutory damages at $500 per violation and $1,500 per willful or knowing violation, and also provides for injunctive relief. 47 U.S.C. § 227(b)(3)(A-B).

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Here Plaintiff alleges that she received text messages from Defendant after requesting such messages to "stop." The parties agree that the messages Plaintiff received resulted from a coding error in Defendant's platform that allowed messages to continue after receipt by Defendant of a "stop" message. The members of the class all received messages after texting the word "STOP" to Defendant.

### B.   History of the Litigation

Plaintiff filed her putative class action Complaint on June 13, 2017, alleging that Defendant violated the TCPA. (Dkt. No. 1.) On July 28, 2017, Defendant filed a Motion to Compel Arbitration. (Dkt. No. 19.) Defendant's motion argued that Ms. Esparza's claims were encompassed by an arbitration agreement and she was required to participate in mandatory binding arbitration to resolve any claims or disputes on an individual, non-class basis. (DKt. No. 19.) After full briefing and oral argument, this Court issued on order on Defendant's Motion to Compel Arbitration finding that the arbitration agreement did not encompass Ms. Esparza's claims. (Dkt. No. 33.) On October 24, 2017, SmartPay filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit. (Dkt. No. 37.) SmartPay answered Plaintiff's Complaint on November 1, 2017. (Dkt. No. 40.)

On November 14, 2017, SmartPay filed a Motion to Stay District Court Proceedings Pending Appeal. (Dkt. No. 41.) After briefing and oral argument on Defendant's request to stay, this Court denied a stay, but limited discovery to that concerning the named Plaintiff only. (Dkt. No. 47.) Following the order, the Parties engaged in discovery, which included the depositions of SmartPay's Fed. R. Civ. P. 30(b)(6) witness and four additional party witnesses and the deposition of Plaintiff. (Declaration of Ronald A. Marron, ("Marron Decl., ¶ 2).) Additionally, the Parties briefed a discovery dispute, which was heard by this Court on April 17, 2018. (Dkt. No. 56.) The discovery dispute gave way to an order entered by this Court which required SmartPay to produce a list containing the date, time and phone number for each time the Help Text Message was sent simultaneously

3

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

C:\Users\etroutman\Documents\Smartpay\Notice of Motion and
Unopposed Motion for Preliminary Approval--EJT Edits.docx

1    or within seconds of a "Stop" request during the relevant time period.  (Dkt. 59.)  Although

2    SmartPay filed a Motion for Leave to File Motion for Reconsideration Regarding the Order

3    (Dkt. No. 61), which was opposed by Plaintiff (Dkt. No. 62), the Court ultimately denied

4    Defendant's motion (Dkt. 64) and Defendant complied with the Court's order (Dkt. No.

5    65.)

6         As to Defendant's appeal, after multiple conferences with the Ninth Circuit

7    Mediation Office, on June 22, 2018, SmartPay filed its Opening Brief with the United

8    States Court of Appeals for the Ninth Circuit and on September 24, 2018, Ms. Esparza filed

9    her Answering Brief.  (Marron Decl., ¶ 3.)  SmartPay filed its optional Reply Brief on

10    November 13, 2018.  (*Id*.)  Although the case was originally set for oral argument, the case

11    was submitted on the briefs on March 15, 2019.  (*Id*.)

12         Meanwhile, on December 20, 2018, despite the discovery limitation due to the

13    pending appeal, Plaintiff filed her Motion for Class Certification.  (Dkt. No. 73.)  On

14    January 9, 2019, Defendant filed a Motion to Stay the Case Pending the Ninth Circuit Court

15    of Appeal's Ruling on the Constitutionality of the TCPA and the Resolution of the Petition

16    for Writ of Certiorari in *Marks v. Crunch Fitness*.  (Dkt. No. 76.)  After full briefing on

17    both motions and oral argument, on February 14, 2018, this Court denied Defendants

18    motion to stay pending decisions in *Gallion v. Charter Commc'ns, Inc*., 287 F. Supp. 3d

19    920 (C.D. Cal. 2018), and *Marks v. Crunch Fitness*, 904 F.3d 1041 (9th Cir. 2018), and

20    held in abeyance a ruling on Plaintiff's Motion for Class Certification pending a resolution

21    of the appeal denying Defendant's Motion to Compel Arbitration.  (Dkt. No. 82.)

22         On March 21, 2019, the United States Court of Appeals for the Ninth Circuit issued

23    its Memorandum affirming this Court correctly held that the TCPA claims in the case are

24    not subject to the arbitration clause in the cell-phone lease agreement between Ms. Esparza

25    and SmartPay.  (Dkt. No. 85.)  A formal mandate of the Ninth Circuit's ruling was issued

26    on April 12, 2019.  (Dkt. No. 87.)  Thereafter, on April 30, 2019, the Parties filed a Joint

27

28

4

C:\Users\etroutman\Documents\Smartpay\Notice of Motion and
Unopposed Motion for Preliminary Approval--EJT Edits.docx

Notice Re Parties' Intent to Mediate advising of an upcoming mediation session with Judge Leo S. Papas, Ret. of Judicate West on July 11, 2019, and requesting that the Court appoint Plaintiff's counsel as interim class counsel for the purpose of proceeding with mediation. (Dkt. No. 88.)  Plaintiff requested, in the alternative, that the Court lift the current stay and issue an order on Plaintiff's Motion for Class Certification.  (*Id*.)

On June 5, 2019, this Court issued an order on Plaintiff's Motion for Class Certification, certifying the following Class:

> "STOP" Text Message Class: All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

(Dkt. No. 89.)

Prior to the mediation with Judge Papas on July 11, 2019, the Parties continued to discuss their views of the case, including a lengthy settlement demand provided by Plaintiff detailing her views of the case and settlement proposal.  (Marron Decl., ¶ 6.)

## C.   **Defenses Maintained by SmartPay**

Although Class Counsel steadfastly believes in the strength of their case, in assessing the worthiness of the resolution reached in this action, Class Counsel does not hide that Defendant asserts numerous remaining defenses to the claims of class members and to certification, including:

1. That the mere use of the word "STOP" in a text message does not mean that the consumer was requesting an opt-out;

2. That class members re-consented by entering into separate contracts with Defendant containing consent disclosures during the class period;

3. That certain class members whose leases had not terminated or whose lease contracts contained arbitration agreements must pursue their claims in individual arbitrations;

4. That Defendant served as a wireless carrier for at least some portion of the class, potentially affording it a right to communicate with class members on their phones without consent; or

5. That the messages at issue were not sent using an ATDS covered by the TCPA.

Plaintiff and Class Counsel strongly disagree that these defenses have merit, but acknowledge the significant time, expense and uncertainty in addressing these issues.

## III. <u>TERMS OF THE SETTLEMENT</u>

If approved by the Court after notice to the Class, the Settlement will resolve this action. The terms of the Settlement are set forth in the settlement agreement attached as Exhibit 1 to the Marron Declaration (the "Settlement Agreement"), and are briefly summarized as follows:

### A.   <u>The Class</u>

The Class is the Certified Class defined as:

All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

Excluded from the Class are SmartPay, its parent companies, affiliates or subsidiaries, or any entities in which such companies have a controlling interest; and any employees thereof; the judge or magistrate judge to whom the Action is assigned and any member of those judges' staffs and immediate families, and any persons who timely and validly request exclusion from the Class. There are 23,144 persons in the Class, whose cellphone numbers,

corresponding name and last known mailing address are all set forth on the Class List. (Agreement, §2.07.)

**B.      The Class Representative and Class Counsel**

The Court previously appointed Plaintiff as the Class Representative and Ronald A. Marron, Alexis M. Wood and Kas L. Gallucci of The Law Offices of Ronald A. Marron as Class Counsel. (Agreement, §2.10 and §2.06.)

**C.      Monetary Relief to the Member of the Class**

Defendant has agreed to pay $8,679,000.00 to create a non-reversionary Settlement Fund to be administered by the settlement administrator, which will be used to pay Class Members, the costs of settlement administration, Plaintiff's counsels' attorneys' fees and reasonable litigation expenses, and an incentive award to Plaintiff, as approved by the Court. (Agreement, § 2.30.)  If any Settlement check is not cashed, the Parties agree that unclaimed funds from uncashed checks issued to Class Members shall be redistributed to the other Class Members who have cashed their checks, or if not feasible, paid as a *cy pres* award approved by the Court. (Agreement, § 13.01.)  The Parties request that any *cy pres* award be made to CTIA, www.ctia.org, an organization that promotes best practices for text messages and recommendations on how to be TCPA compliant. (Agreement, § 2.12.)

**D.      Notice to the Class**

The Parties have agreed to notify Class Members about the Settlement by sending postcards by U.S. First Class Mail ("Direct Notice.")  The Direct Notice advises the Class Members that they will receive a check for their pro rata share of the Settlement Fund and includes instructions on how to object or exclude themselves, should a Class Member desire to do so.  The claims administrator will also post a long form of the notice in a question and answer format on a website (the "Settlement Website") which sets forth the details of the Settlement and the rights of Class Members to participate, exclude themselves

or object to the Settlement.   (Agreement, §§ 11.01-11.06; Exhibit A and B attached to the Settlement Agreement). There is no claim form necessary.

### E.   Settlement Administrator

Plaintiff requests that Heffler Claims Group ("Heffler") be appointed to serve as the third-party settlement administrator who will issue Direct Notice, maintain the Settlement Website, and issue checks and withhold income taxes or collect W-9 information if needed. The anticipated administration costs are $73,811.00.  (Exhibit 2 attached to the Declaration of Ronald A. Marron.), which will be paid from the Settlement Fund.  Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for First Class Mail notice to the 23,144 Class Members, plus First Class Mailing of the settlement checks.

### F.   Incentive Award and Attorneys' Fees

SmartPay has also agreed to pay from the Settlement Fund, subject to Court approval, reasonable attorneys' fees and costs to Class Counsel, and an incentive award to the Class Representative, in amounts the Court deems reasonable.  (Agreement, § 12.30.) The Settlement Agreement, however, is not contingent on the outcome of any such request. Class Counsel will not seek an award of attorneys' fees greater than one-third the total Settlement Fund ($2,893,000) or costs of more than $60,000.  Class Counsel will not seek an Incentive Award of more than $7,500 for the Class Representative.

### G.   Scope of Release

In exchange for the relief described above, each Class Members who does not properly opt-out of the Settlement will release claims against the "Released Parties" for all claims, as of the date of the Final Approval Order, that relate to automated text messages pursuant to the Telephone Consumer Protection Act, 47 USC § 227 and parallel state law claims related to such text messages sent by SmartPay to Class Members during the Class Period. (Agreement, § 18.01.)

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Plaintiff's Notice and Unopposed Motion for Preliminary Approval of Class Action Settlement

C:\Users\etroutman\Documents\Smartpay\Notice of Motion and
Unopposed Motion for Preliminary Approval--EJT Edits.docx

# IV. ARGUMENT

## A. Legal Standard for Preliminary Approval of a Class Action Settlement

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. P. 23(e). As described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, Rule 23 prescribes defined procedures and criteria for settlement approval in class action settlements, including preliminary approval, dissemination of notice to class members, and a fairness hearing. *Manual*, §§ 21.632, 21.633, 21.634.

The purpose of the Court's preliminary evaluation of a settlement is to determine whether it is within the "range of reasonableness" and, thus, whether disseminating notice to the class and scheduling a formal fairness hearing is merited. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004). Preliminary approval does not require the Court to make an in-depth and final determination that a settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned,"

because settlements minimize potentially substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted); *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). *Officers for Justice,* 688 F.2d at 625. As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.,* No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.,* No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.,* 303 F.R.D. 337, 350 (E.D. Cal. 2014).

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to

proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," this Court may consider some or all of the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.  Based on these standards, Plaintiff respectfully submits that for the reasons detailed below the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

**B.   The Proposed Settlement is Fair, Reasonable and Adequate and Should be Preliminarily Approved as both Sides Face Significant Challenges in Litigating this Case**

While Plaintiff strongly believes in her claims, SmartPay vigorously disputes that it violated the TCPA. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions being issued from district courts on an almost daily basis.

---

11

C:\Users\etroutman\Documents\Smartpay\Notice of Motion and
Unopposed Motion for Preliminary Approval--EJT Edits.docx

Against that backdrop, SmartPay raised a host of defenses, both on the merits and to the maintenance of class certification, including:

1. That the mere use of the word "STOP" in a text message does not mean that the consumer was requesting an opt-out;

2. That class members re-consented by entering into separate contracts with Defendant containing consent disclosures during the class period;

3. That certain class members whose leases had not terminated or whose lease contracts contained arbitration agreements must pursue their claims in individual arbitrations;

4. That Defendant served as a wireless carrier for at least some portion of the class, potentially affording it a right to communicate with class members on their phones without consent; or

5. That the messages at issue were not sent using an ATDS covered by the TCPA.

Thus, there can be little question that Plaintiff faced real risks in prevailing on her claims and maintaining certification through trial. The $8.75 million class fund, viewed in light of these risks, underscores the reasonableness of the settlement.

**C.   The Immediate, Meaningful Cash Relief Afforded by the Settlement Favors Preliminary Approval.**

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors preliminary approval. SmartPay will pay $8.75 million into a non-reversionary settlement fund to resolve this matter—an amount that is significant in its own right. The amount per Class Member also fits neatly within the range for similar settlements.

This case was at a stage that allowed the Parties to value it fairly.  The Parties had been litigating the case for over two years and had engaged in extensive written and oral discovery prior to Settlement.  *Etter v. Allstate Ins. Co.*, No. C 17-00184 WHA, 2018 WL 5761755, at *2 (N.D. Cal. May 30, 2018) ("Given that this proposed settlement agreement

12

comes after over a year of litigation, discovery, and motion practice, both sides have had ample opportunity to carefully assess and weigh the relative strengths and weaknesses of their legal position.")  Further, Plaintiff had served her expert report and a Class has already been certified.

The amount offered in the Settlement demonstrates that this Settlement is an excellent result for both the Class and the Defendant, considering the risks.  Here, Plaintiff recovered a Settlement Fund based on a gross recovery of $375.00 per Class Member, which is 75% of the reasonable potential recovery per violation.  *See Etter*, 2018 WL 5761755, at *2 (preliminary approval granted where plaintiff's gross recovery in a TCPA case represented 75% of the best possible outcome.)  Each Class Member will receive their pro rata share of the Settlement, net of attorneys' fees and expenses, an incentive award to the Plaintiff, and settlement administration costs.  This amount is averaged to be approximately $245.00.  Every Class Member who has not opted out will receive a check from the Settlement Administrator-- there are no claim forms needed.  Any balance remaining after the initial distribution (due to uncashed checks) will be redistributed to Class Members on a pro rata basis.  (Settlement Agreement ¶ 13.01.)  If the amount is less than $10 per Class Member, the remaining funds will be paid out to the *cy pres* recipient who, with this Court's approval, is CTIA.  (*Id*.)

Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").

This recovery, however, is not a small percentage of the potential recovery and is thus an exceptional result for the Class, and compares favorably to other TCPA class action

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Plaintiff's Notice and Unopposed Motion for Preliminary Approval of Class
Action Settlement

settlements. *See Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (based on class member participation, each member's pro rata share will be $33.36.); *Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-2349-MMA (BGS), 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received approximately $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD), 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (providing for payments of $34.60 to each claiming class member); *Wright v. Nationstar Mortgage LLC*, No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claiming class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($93.22 per claiming class member).

While it is true the Class would be entitled to additional funds if they were to fully recover for their claims, a settlement that attempts to compensate every member of the class is infeasible because "complete victory would most surely bankrupt the prospective judgment debtor." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 790.

Further, because Class Members will not need to opt-in and SmartPay maintains the last known address of the Class Members, the expected high participation rate distinguishes this Settlement from other TCPA cases where the approved settlement provided each class member with a significant recovery, but a significantly smaller percentage of eligible class members actually filed a claim and obtained any relief. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5-6 (N.D. Cal. Apr. 15, 2015) ($151 for each class member who filed a claim, but only 1.9% of class filed a claim); *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) ($500 for each class member who filed a claim, but "only a small portion of the Settlement Class is expected to file claims"); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012

14

WL 216522, at *4, *7 (N.D. Cal. Jan. 24, 2012) ($300-325 to each class member who filed a claim, but only 1,986 out of 137,891 class members, or 1.44%, filed a claim).  Here, not only is there a significant recovery for each Class Member, but a majority of all Class Members are expected to receive payment.

Given the favorable terms of the proposed Settlement and the rigorous manner in which the terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute and merits preliminary approval.

### D. Experienced Counsel Have Determined that the Settlement is Appropriate and Fair to the Class

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel have extensive experience in class actions and, in particular, experience in class actions relating to consumer protection, including the TCPA. (Marron Decl.)  Further, the Parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Leo Papas, demonstrate the fairness of the settlement, and that the settlement is not a product of collusion. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.")  Plaintiff's Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable, adequate and in the best interests of the Class Members.

### E. This Court has Already Certified the Class and Appointed Plaintiff's Counsel as Class Counsel and Plaintiff as the Class Representative.

On June 6, 2019, this Court certified the Class proposed in the Parties Settlement Agreement, ordering that the "class definition shall apply for all purposes, including settlement." (Dkt. No. 89 at 10).  The Court also appointed Shawn Esparza as the Class Representative and her counsel Ronald Marron, Alexis Wood, and Kas Gallucci of the Law Offices of Ronald A. Marron as Class Counsel.  (*Id.*).

1

### F.     <u>The Proposed Method of Class Notice is Appropriate</u>

2

Once a class has been certified, due process and Rule 23 require that the Court

3

"direct to class members the best notice that is practicable under the circumstances,

4

including individual notice to all members who can be identified through reasonable

5

effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain specific information in plain,

6

easily understood language, including the nature of the action and the rights of class

7

members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). That is the case here, where the format and

8

language of each form of notice have been carefully drafted in straightforward, easy-to-

9

read language, and all information required under Rule 23 is present. The proposed forms

10

of notice are attached to the Settlement Agreement as Exhibits A and B.

11

To ensure that the notice satisfies the requirements of due process and Rule 23 in

12

both form and content, the Parties have agreed to a comprehensive notice plan developed

13

in conjunction with professional claims administrator Heffler Claims Group ("Heffler.")

14

(Settlement Agreement ¶ 2.04.) Relying on the Class List provided by SmartPay, which

15

includes the cell phone numbers of all Class Members in addition to the corresponding

16

name and last known mailing address, Heffler will check each address provided against the

17

United States Post Office National Change of Address Database before the initial mailing.

18

(Settlement Agreement ¶ 11.01.) Further, Heffler will do what it believes necessary,

19

including a reverse lookup, to obtain the current addresses of the owners of the cellular

20

phone numbers provided on the Class List, or if an address is unavailable or unsuccessful,

21

Heffler may use available email addresses to send Direct Notice and to obtain current

22

address information. (*Id.*) The Direct Notice directs Class Members to the Settlement

23

Website, which will contain, important court documents, and answers to frequently asked

24

questions. (*Id.*, ¶ 11.04.)

25

Because the proposed notice plan effectuates Direct Notice to all Class Members

26

and fully apprises the Class Members of their rights, it comports with the requirements of

27

16

28

due process and Rule 23. Consequently, the Court should approve the Parties' proposed notice plan.

**G.** **The Court Should Appoint Heffler Claims Group as the Claims Administrator**

The Parties have agreed upon, and request that the Court appoint Heffler Claims Group to serve as the Claims Administrator. (Agreement, §§ 2.04, 21.02.) Heffler Claims Group specializes in providing administrative services in class action litigation and has extensive experience in administering consumer protection and privacy class action settlements.

**H.** **A Final Approval Hearing Should be Scheduled**

The last step in the settlement approval process is the formal fairness or final approval hearing. Plaintiff requests that the hearing be held at least 120 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice, direct mail, and website notice. The proposed timeline is as follows:

| EVENT | SCHEDULED DATE |
|---|---|
| Serve Direct Notice ("Notice Date") | Within 30 days of Prelim App Order |
| Opt-out and Objection Deadline | 60 days after Notice Date |
| Fees Brief Deadline | 45 days after Notice Date |
| Final Approval Brief Deadline | 14 days before Final App Hearing |
| Final Approval Hearing | At least 120 days after Prelim App Order |

**V.  CONCLUSION**

For all the foregoing reasons, the Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement.

Dated:      August 20, 2019          By: */s/ Ronald A. Marron*
                                     **LAW OFFICES OF RONALD A. MARRON**
                                     RONALD A. MARRON
                                     ALEXIS M. WOOD

17

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

KAS L. GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT