1

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

2

3

4

5

6

7

8

*Class Counsel*

9

10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

11

12

| | Case No.: 17-cv-3421-WHA |
|---|---|

13

14

15

16

17

18

19

20

21

22

23

SHAWN ESPARZA, on behalf of herself, and all others similarly situated,

Plaintiff,

v.

SMARTPAY LEASING, INC.,

Defendant.

**CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

Hearing Date:    January 16, 2020
Hearing Time:    11:00 a.m.
Judge:           Hon. William Alsup
Courtroom:       12 – 19th Floor

24

25

26

27

28

---

## <u>NOTICE OF MOTION</u>

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

On January 16, 2020 at 11:00 a.m., in Courtroom 12 – 19th Floor of the Honorable William Alsup, Plaintiff Shawn Esparza ("Plaintiff") will and hereby does move the Court for an Order: (a) awarding attorneys' fees in the amount of $2,142,354.60 (25% of the net common-fund settlement); (b) awarding costs in the amount of $32,081.58 (to be paid from the common-fund settlement); and (c) approving incentive award in the amount of $2,500 to the Class representative Shawn Esparza (to be paid from the common-fund settlement), which will result in a net recovery for Class members of approximately $280 each, without need for Class members to submit claims.

The basis for this Motion is that the requested attorneys' fees, costs reimbursement, and incentive award are reasonable based on the circumstances of the case and the recovery for the Class.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Ronald A. Marron, Shawn Esparza and David Kaufman; documents on file with this Court; and oral argument and any additional material that may be elicited at the hearing on the Motion.

Respectfully Submitted,

Dated: November 21, 2019

By: */s/ Ronald A. Marron*
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON

*Class Counsel*

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

      A.   Nature and History of the Case ............................................................. 2

      B.   Class Counsel's Work for the Class's Benefit...................................... 5

      C.   Settlement Administration to Date and the Class's Reaction to the Settlement.......................................................................................... 7

III.  ATTORNEYS' FEES .......................................................................................... 8

      A.   This Court Should Use the Percentage-of-the-Fund Method ............... 8

      B.   25% of the Net Common Fund is a Reasonable Attorney's Fee Award in this Action........................................................................... 9

      C.   The Ninth Circuit has Adopted a 25% Benchmark for Attorneys' Fees .................................................................................................... 9

      D.   Class Counsel Achieved an Outstanding Result for the Class ........... 11

      E.   The Action Involved Significant Risks............................................... 12

      F.   The Litigation Required a High Degree of Skill and Quality of Work.................................................................................................. 13

      G.   The Contingent Nature of the Fees, and Burden of Costs, Supports the Fee Award........................................................................ 15

      H.   Class Reaction Supports Approval of the Requested Attorneys' Fees Award ....................................................................................... 16

      I.   Lodestar Cross-Check Supports the Requested Attorneys' Fees Award .............................................................................................. 16

IV.   COSTS ............................................................................................................. 18

V.    INCENTIVE AWARD...................................................................................... 19

VI.   CONCLUSION .................................................................................................. 20

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
CLASS COUNSEL'S NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*ACA Int'l v. Fed. Commc'ns. Comm.*,

4
    885 F.3d 687 (D.C. Cir. 2018) .................................................................. 13

5
*Birch v. Office Depot Inc.*,

6
    No. 06 CV 1690 DMS (WMC), 2007 WL 9776717 (S.D. Cal. Sep. 28, 2007)... 15

7
*Boeing Co. v. Van Gemert*,

8
    444 U.S. 472 (1980) .................................................................................. 8

9
*Destefano v. Zynga, Inc.*,

10
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............. 11, 12

11
*Dominguez v. Yahoo!, Inc.*,

12
    No. 13-cv-1887, 2017 WL 390267, at * (E.D. Pa. Jan. 27, 2017) ........................ 13

13
*Etter v. Allstate Ins. Co.*,

14
    No. C 17-00184 WHA, 2018 WL 5791883 (N.D. Cal. Nov. 4, 2018)............ 10, 17

15
*Farrar v. Hobby*,

16
    506 U.S. 103 (1992) ................................................................................ 11

17
*Fishman v. Tiger Nat. Gas Inc.*,

18
    No. C 17-05351 WHA, 2019 WL 2548665 (N.D. Cal. June 20, 2019) .............. 10

19
*In re Capital One Tel. Consumer Prot. Act Litig.*,

20
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................. 11, 13

21
*In re Charles Schwab Corp. Sec. Litig.*,

22
    No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ................ 20

23
*In re Media Vision Tech. Sec. Litig.*,

24
    913 F. Supp. 1362 (N.D. Cal. 1996) .......................................................... 18

25
*In re Omnivision Techs., Inc.*,

26
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................................... 9

27

28

ii

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ................................................................ 10

*In re Oracle Sec. Litig.,*
   852 F. Supp. 1437 (N.D. Cal. 1994) ................................................. 9, 19

*In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions,*
   148 F.3d 283 (3d Cir. 1998) .............................................................. 17

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 2017) ......................................................... 8, 15

*In re: Cathode Ray Tube (Crt) Antitrust Litig.,*
   No. 3:07-cv-5944 JST, 2016 WK 721680 (N.D. Cal. Jan. 28, 2016).................... 9

*Kolinek v. Walgreen Co.,*
   311 F.R.D. 483, 502-503 (N.D. Ill. 2015) .......................................... 13

*Kramer v. Autobytel, Inc.,*
   No. 10-cv-2722, ECF No. 148 (N.D. Cal. Jan. 27, 2012) ...................... 11

*Laffitte v. Robert Half Internat. Inc.,*
   1 Cal. 5th 480 (2016) ..................................................................... 9

*Lewis v. Silvertree Mohave Homeowners' Ass'n, Inc.,*
   No. C 16-03581 WHA, 2017 WL 5495816 (N.D. Cal. Nov. 16, 2017)............... 10

*Luna v. Marvell Tech. Grp.,*
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ............... 17

*Marks v. Crunch Fitness,*
   904 F.3d 1041 (9th Cir. 2018) ........................................................... 4

*McDaniel v. Cty of Schenectady,*
   595 F.3d 411 (2d Cir. 2010).............................................................. 9

*McLaughlin v. Wells Fargo Bank, N.A.,*
   No. C 15-02904 WHA, 2017 WL 994969 (N.D. Cal. Mar. 15, 2017)................. 19

iii

*Morris v. Fid. Investments,*
  No. C 17-06027 WHA, 2019 WL 4040069 (N.D. Cal. Aug. 26, 2019) ............... 10

*Paul, Johnson, Alston & Hunt v. Graulty,*
  886 F.2d 268 (9th Cir. 1989) ............................................... 9

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,*
  281 F. Supp. 3d 833 (N.D. Cal. 2017) ...................................... 10

*Richardson v. Interstate Hotels & Resorts, Inc.,*
  No. C 16-06772 WHA, 2019 WL 803746 (N.D. Cal. Feb. 21, 2019) ............. 10, 20

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ............................................. 19

*Rose v. Bank of Am. Corp.,*
  No. 11-cv-2390 (N.D. Cal.) ............................................... 11

*Saechao v. Landrys, Inc.,*
  No. C 15-00815 WHA, 2016 U.S. Dist. LEXIS 111660 (N.D. Cal. Aug. 19, 2016)
  .......................................................................... 12

*Satterfield v. Simon & Schuster, Inc., et al.,*
  No. 06-cv-2893, ECF No. 132 (N.D. Cal. Aug. 6, 2010) ..................... 11

*Serrano v. Priest,*
  20 Cal. 3d 25 (1977) ...................................................... 8

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) .............................................. 8

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ..................................... 9, 16, 17

*Weinstein v. The Timberland Co., et al.,* No. 06-cv-484, ECF No. 93 (N.D. Ill. Dec.
  18, 2008) ................................................................ 11

iv

*Wright v. Nationstar Mortgage LLC*, No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...................................................................................... 11

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................................................. 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

After two and a half years of litigation, including defeating Defendant's appeal to the Ninth Circuit, a successful class certification motion, vigorous settlement negotiations, and a highly successful notice process, Plaintiff Shawn Esparza ("Plaintiff") now seeks approval of a fee award for her attorneys that is in line with, and in most cases lower than, the awards issued by courts faced with similar settlements throughout this Circuit. As explained in Plaintiff's preliminary approval papers and further herein, the Settlement[1] provides relief that far outpaces that offered in analogous cases, despite substantial risks that were, in some instances, unique to this case. Defendant SmartPay Leasing, Inc. ("SmartPay" or "Defendant") has created a $8,679,000.00 non-reversionary fund, equal to $375.00 per Class Member (23,144 in the Class), which will be used to compensate Class Members, pay the costs of settlement administration, attorneys' fees and reasonable litigation expenses, and provide an incentive award to the Plaintiff, as approved by the Court (the "Settlement Fund.")

At this time, Class Counsel expects claiming Class Members to receive payments of approximately $280 each, far in excess of the $20 to $100 typically received in cases, like this one, where consumers file suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), against a company with which they have an existing business relationship. Based on the results of the notice process to date, the Class views this as a uniformly positive result, with not a single objection or request for exclusion lodged to date.

With such a positive result and the Class's positive reception in mind, Plaintiff now moves the Court to approve (i) the fee award of $2,142,354.60 to Class Counsel which is equal to 25 percent of the net Settlement Fund, after excluding anticipated notice costs and the proposed incentive award, (ii) costs of $32,081.58, and (iii) payment of an incentive

---

[1]   As used herein, all terms defined in the Settlement Agreement shall have the meanings given therein.

award of $2,500 to Plaintiff in recognition of her effort on behalf of the Class. These requests are in line with amounts approved in similar TCPA class action settlements in this Circuit and similarity in line with amounts approved by the Honorable Judge Alsup.  The amounts also reflect the risk and results accompanying this case and were specifically included in the Notice documents to the Class.[2] For these reasons, and pursuant to Federal Rule of Civil Procedure 23(h), Plaintiff respectfully requests that the Court approve the requested fee and incentive award.

## II.   BACKGROUND

### A. Nature and History of the Case

The relevant facts of the case are set forth in detail in Plaintiff's memorandum in support of her motion for preliminary approval. (*See* Dkt No. 103 at 2-6.) Nonetheless, a brief recap is provided here for context.

Plaintiff filed her putative class action Complaint on June 13, 2017, alleging that Defendant violated the TCPA. (Dkt. No. 1.)  On July 28, 2017, Defendant filed a Motion to Compel Arbitration.  (Dkt. No. 19.)  Defendant's motion argued that Ms. Esparza's claims were encompassed by an arbitration agreement and she was required to participate in mandatory binding arbitration to resolve any claims or disputes on an individual, non-class basis. (Dkt. No. 19.)  After full briefing and oral argument, this Court issued on order on Defendant's Motion to Compel Arbitration finding that the arbitration agreement did not

---

[2] The Court-approved Notice documents advise that Class Counsel will apply to the Court for no more than one-third of the Settlement Fund (a maximum of $2,893,000) for their attorneys' fees, for the their litigation costs (approximately $60,000), as well as all reasonable costs and expenses for giving and administering notice (estimated at $75,000) and an Incentive Award in the amount of no more than $7,500, with an estimate that Class Members would receive approximately $200-$245. *See* Dkt. No. 103-2 at 38-39.  Notably, although no Class Member has objected to these amounts, Class Counsel are requesting substantially less than the amounts provided in the Notice documents thus allowing more funds to be attributed to the Class (*i.e.* increasing the Class Member amount from $200/$245 to $280 if notice reaches 100% of the Class (higher amount if reach is lower than 100%)).

encompass Ms. Esparza's claims.  (Dkt. No. 33.)  On October 24, 2017, SmartPay filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit.  (Dkt. No. 37.)  SmartPay answered Plaintiff's Complaint on November 1, 2017.  (Dkt. No. 40.)

On November 14, 2017, SmartPay filed a Motion to Stay District Court Proceedings Pending Appeal.  (Dkt. No. 41.)  After briefing and oral argument on Defendant's request to stay, this Court denied a stay, but limited discovery to that concerning the named Plaintiff only.  (Dkt. No. 47.)  Following the order, the Parties engaged in discovery, which included the depositions of SmartPay's Fed. R. Civ. P. 30(b)(6) witness and four additional party witnesses and the deposition of Plaintiff.  (Declaration of Ronald A. Marron, ("Marron Decl., ¶ 13).)  Additionally, the Parties briefed a discovery dispute, which was heard by this Court on April 17, 2018. (Dkt. No. 56.)  The discovery dispute gave way to an order entered by this Court which required SmartPay to produce a list containing the date, time and phone number for each time the Help Text Message was sent simultaneously or within seconds of a "Stop" request during the relevant time period.  (Dkt. No. 59.)  Although SmartPay filed a Motion for Leave to File Motion for Reconsideration Regarding the Order (Dkt. No. 61), which was opposed by Plaintiff (Dkt. No. 62), the Court ultimately denied Defendant's motion (Dkt. No. 64) and Defendant complied with the Court's order (Dkt. No. 65.)

As to Defendant's appeal, after multiple conferences with the Ninth Circuit Mediation Office, on June 22, 2018, SmartPay filed its Opening Brief with the United States Court of Appeals for the Ninth Circuit and on September 24, 2018, Ms. Esparza filed her Answering Brief.  (Marron Decl., ¶ 14.)  SmartPay filed its optional Reply Brief on November 13, 2018.  Although the case was originally set for oral argument, the case was submitted on the briefs on March 15, 2019.

Meanwhile, on December 20, 2018, despite the discovery limitation due to the pending appeal, Plaintiff filed her Motion for Class Certification.  (Dkt. No. 73.)  On January 9, 2019, Defendant filed a Motion to Stay the Case Pending the Ninth Circuit Court of Appeal's Ruling on the Constitutionality of the TCPA and the Resolution of the Petition

3

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
CLASS COUNSEL'S NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

for Writ of Certiorari in *Marks v. Crunch Fitness*.  (Dkt. No. 76.)  After full briefing on both motions and oral argument, on February 14, 2018, this Court denied Defendant's motion to stay pending decisions in *Gallion v. Charter Commc'ns, Inc*., 287 F. Supp. 3d 920 (C.D. Cal. 2018), and *Marks v. Crunch Fitness*, 904 F.3d 1041 (9th Cir. 2018), and held in abeyance a ruling on Plaintiff's Motion for Class Certification pending a resolution of the appeal denying Defendant's Motion to Compel Arbitration.  (Dkt. No. 82.)

On March 21, 2019, the United States Court of Appeals for the Ninth Circuit issued its Memorandum affirming this Court correctly held that the TCPA claims in the case are not subject to the arbitration clause in the terminated cell-phone lease agreement between Ms. Esparza and SmartPay.  (Dkt. No. 85.)  A formal mandate of the Ninth Circuit's ruling was issued on April 12, 2019.  (Dkt. No. 87.)  Thereafter, on April 30, 2019, the Parties filed a Joint Notice Re Parties' Intent to Mediate advising of an upcoming mediation session with Judge Leo S. Papas, Ret. of Judicate West on July 11, 2019, and requesting that the Court appoint Plaintiff's counsel as interim class counsel for the purpose of proceeding with mediation.  (Dkt. No. 88.)  Plaintiff requested, in the alternative, that the Court lift the current stay and issue an order on Plaintiff's Motion for Class Certification.  (*Id*.)

On June 5, 2019, this Court issued an order on Plaintiff's Motion for Class Certification, certifying the following Class:

> "STOP" Text Message Class: All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

(Dkt. No. 89.)

Prior to the mediation with Judge Papas on July 11, 2019, the Parties continued to discuss their views of the case, including a lengthy settlement demand provided by Plaintiff detailing her views of the case and settlement proposal.  (Marron Decl., ¶ 15.)

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
CLASS COUNSEL'S NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

**B. <u>Class Counsel's Work for the Class's Benefit</u>**

Throughout the pendency of this case, Class Counsel have worked diligently to advance the Class's claims and secure the exemplary relief available to the Class. Beginning pre-suit, Class Counsel recognized that one of the dispositive issues in the case would be the fact-intensive inquiry as to whether the dialer used was an ATDS. (Marron Decl. ¶ 5.) Accordingly, Class Counsel retained an ATDS expert prior to filing the complaint and integrated that expert in the process of developing and implementing Plaintiff's discovery strategy. (Marron Decl. ¶ 6.)

To implement their discovery strategy, Class Counsel obtained and reviewed discovery responses from SmartPay,[3] obtained and reviewed over a thousand pages of documents, deposed SmartPay's 30(b)(6) witness, Winnie Lai, deposed additional witnesses identified by SmartPay as knowledgeable on certain topics including Nick Whitson, Jonathan Li and Paul Cathey, and engaged in meet-and-confer sessions to pursue the discovery necessary to obtain the information to prove up Plaintiff's claims. (Marron Decl. ¶ 13.) Additionally, Class Counsel engaged in third-party discovery to Twilio, Inc., the dialing platform involved in the matter, which included many telephonic meet and confers and review of Twilio's documents produced in response to Plaintiff's Subpoena and publicly available on its website. (Marron Decl. ¶ 9.) After conducting written and oral discovery, Plaintiff, despite the pending appeal and a Court ordered limitation imposing only individual discovery (*see* Dkt. No. 47), moved for class certification of her claims.

---

[3] Plaintiff served and Defendant responded to Interrogatories, Set One, and Requests for Production of Documents, Sets One, Two and Three. (Marron Decl. ¶ 7.) Additionally, in preparation for trial, Plaintiff served Interrogatories, Set Two, and Requests for Admissions, Sets One and Two; however, because the case settled, Defendant did not respond to this discovery. (Marron Decl. ¶ 11.) Plaintiff also issued Deposition Notices for Twilio, Inc. and SmartPay employee Duc Phan in preparation for trial. (Marron Decl. ¶ 9.) Again, because the case settled, these depositions were taken off calendar pending preliminary approval by the Court. (*Id.*).

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Class Counsel's Notice and Motion for Attorneys' Fees, Costs, and Incentive Award

1   (Dkt. No. 73.)  Plaintiff's counsel also served the Expert Report of Jeffrey A. Hansen on
2   February 1, 2019. (Marron Decl. ¶ 10.)

3       During the hearing on Plaintiff's class certification motion on February 14, 2019,
4   Judge Alsup held in abeyance its ruling on the motion pending the resolution of SmartPay's
5   appeal of the Court's October 3, 2017 order denying Defendant's motion to compel
6   arbitration. The Court also advised that if the parties were interested in discussing settlement
7   prior to a ruling on the class certification motion this was the type of case where the Court
8   would be willing to appoint Plaintiff's counsel as interim class counsel.  (Dkt. No. 88.)
9   However, despite the Court's advisement, SmartPay had no interest in settling the matter
10  until April 30, 2019, after the Ninth Circuit affirmed the Court's October 3, 2017 order.
11  (*Id*.)

12      After the Class was certified, the Parties proceeded to schedule a mediation session
13  with Judge Leo S. Papas, Ret., of Judicate West. (Marron Decl. ¶ 15.) In addition to
14  engaging in preliminary discussions with opposing counsel and Judge Papas, the Parties
15  prepared voluminous pre-mediation statements in advance of the session. *Id*. The mediation
16  lasted a full day, and pushed into after hours, and at the end, the Parties signed a
17  memorandum of understanding ("MOU") regarding the key terms of the settlement. *Id*.
18  Over the next 30 days, the Parties negotiated the details of the settlement agreement before
19  finally executing it on August 13, 2019. *Id*. Additionally, per the MOU, Plaintiff conducted
20  a confirmatory 30(b)(6) deposition to confirm the accuracy of the number and identity of
21  Class Members, which had been produced by Defendant during discovery and
22  supplemented prior to mediation.

23      Once the Agreement was executed, Class Counsel prepared and submitted the
24  preliminary approval papers and has continued to work with the claims administer, Heffler

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Class Counsel's Notice and Motion for Attorneys' Fees, Costs, and Incentive
Award

Claims Group ("Heffler"), to ensure that the notice process proceeds without disruption. (Marron Decl. ¶ 18.)[4]

## C. __Settlement Administration to Date and the Class's Reaction to the Settlement__

The Parties agreed to notify Class Members about the Settlement by sending postcards via U.S. First Class Mail ("Direct Notice.")  The Direct Notice advises Class Members that they will receive a check for their *pro rata* share of the Settlement Fund and includes instructions on how to object or exclude themselves, should a Class Member desire to do so.  Notice was also disseminated via a long form of the notice in a question and answer format on a website (the "Settlement Website" available at http://www.smartpaytcpaclassaction.com/) which sets forth the details of the Settlement and the rights of Class Members to participate, exclude themselves or object to the Settlement. (Agreement, §§ 11.01-11.06; Exhibit A and B attached to the Settlement Agreement (Dkt. No. 103-2)). A key aspect of this Settlement is that there is no claim form necessary so every Class Member will receive a portion of the settlement.

In accordance with the Court's preliminary approval order, Class Counsel, Defendant's counsel, and Heffler began the work necessary to effectuate the notice plan as soon as they were able after entry of preliminary approval. On September 20, 2019, Heffler established a toll-free telephone number for the purpose of allowing Class Members to access general information about the litigation, Settlement, and to provide the ability to request a copy of the Direct Notice by speaking with a live operator.  (Heffler Decl., ¶ 6). Also on September 20, 2019, Heffler opened a post office box to receive written requests for exclusion, written objections, undeliverable Postcard Notices, any notice inquiries or

---

[4] Prior to mediation, the Parties also engaged in negotiations regarding the requisite notice to the certified class.  This included drafting a "Notice of Pending Class Action" which was submitted to the Court (Dkt. Nos. 90-95) and obtaining various quotes from class action administrators, including negotiations with the various class action administrators on the pricing of providing notice and subsequent claims administration.  (Marron Decl., ¶ 16).

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Class Counsel's Notice and Motion for Attorneys' Fees, Costs, and Incentive Award

other communications about the Settlement.  (Heffler Decl., ¶ 7).  Thereafter on October 9, 2019, Heffler established the Settlement Website.  (Heffler Decl., ¶ 8).

On October 16, 2019, Heffler mailed the 23,144 Direct Notice Postcards to Class Members.  (Heffler Decl., ¶ 9).  To date, at least 18,020 postcards have been delivered. (*Id*.).  After the initial mailing, 5,124 postcards were returned by the USPS as undeliverable to the address listed, 43 returned with a forwarding address.  (*Id*.).     Accordingly, on November 19, 2019, Heffler sent the remaining 5,081 postcards returned as undeliverable through two locater services systems, in which 4,941 updated addresses were obtained. (Heffler Decl., ¶ 10).  The 4,941 updated records are estimated to  be mailed November 27, 2019.  (Heffler Decl., ¶ 11).  140 postcards are going through additional address search.[5] (Heffler Decl., ¶ 10).  As of November 19, 2019, not a single objection or request for exclusion has been lodged. (Heffler Decl., ¶ 11).

## III.   ATTORNEYS' FEES

### A. This Court Should Use the Percentage-of-the-Fund Method

Under the common fund doctrine, class counsel have an equitable right to receive compensation for successfully creating a common fund. *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 2017) ("*WPPSS*") (the class "should share the wealth with the lawyers whose skill and effort helped create it"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (" a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). California and the Ninth Circuit recognize the common fund doctrine. *Serrano*, 20 Cal. 3d at 35-38; *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).

In the Ninth Circuit, a district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method. *WPPSS*, 19 F.3d at 1295-96.

---

[5] Additionally, per the Settlement Agreement, the Claims Administrator may use the Class Members' email address to send Direct Notice.  (Settlement Agreement ¶ 11.01.)

Where contingency fee litigation results in a common-fund settlement, as in the instant Action, percentage-of-the-fund is the most appropriate way to calculate a reasonable attorneys' fee award. *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 506 (2016); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). This is because "percentage of the fund better 'align[s] the interest of lawyer and client. The lawyer gains only to the extent his client gains.'" *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994) (citation omitted). In fact, a lodestar method can encourage plaintiffs' attorneys to settle even when it is not within their clients' best interest because they would be guaranteed to receive compensation through that settlement, whereas a trial involves risks. *See McDaniel v. Cty of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010).

**B. 25% of the Net Common Fund is a Reasonable Attorney's Fee Award in this Action**

In *In re Omnivision Techs., Inc.*, the Court set forth several factors relevant for a district court charged with determining the reasonableness of a fee award: results achieved, risk of litigation, skill required/quality of work, contingent nature of fees and financial burden, and awards in similar cases. 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007), citing *Vizcaino*. Class Counsel address each *Omnivision* factor in turn, after discussing the Ninth Circuit's 25% benchmark and the basis for the application of the 25% of the net common fund.

**C. The Ninth Circuit has Adopted a 25% Benchmark for Attorneys' Fees**

In the Ninth Circuit, the starting point for calculating attorneys' fees is 25% of the common fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 WK 721680, at *34 (N.D. Cal. Jan. 28, 2016). Awards can vary up or down depending on a variety of factors, including the size of the common fund and the lodestar cross-check (discussed below). Class Counsel here seek fees amounting to the 25% benchmark of the *net* common fund.

9

District courts have the discretion to award attorneys' fees as a percentage of the *gross* common fund or the *net* common fund (i.e., after subtracting costs and incentive awards). *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 953 (9th Cir. 2015). Here, Class Counsel seeks an award of 25% of the *net* common fund, which attributes more funds to the Class. On a net basis, Class Counsel would recover 25% of $8,569,418.42, or $2,142,354.60.

The most analogous case to the case presented here is *Etter v. Allstate Ins. Co.*, a case in which the Honorable Judge Alsup granted final approval of a similar TCPA class action in which class counsel was also able to obtain a sizable 75 percent recovery of the ordinary statutory damages under the TCPA.  No. C 17-00184 WHA, 2018 WL 5791883 at *5, (N.D. Cal. Nov. 4, 2018).  In *Etter*, the Court awarded attorneys' fee in the amount of 25% of the net settlement fund which is Class Counsel's request here.  The Honorable Judge Alsup has also granted similar awards in other class action settlements.  *See Fishman v. Tiger Nat. Gas Inc.,* No. C 17-05351 WHA, 2019 WL 2548665, at *4 (N.D. Cal. June 20, 2019) (Judge Alusp found that 25% of the net settlement fund was fair, adequate, and reasonable); *Lewis v. Silvertree Mohave Homeowners' Ass'n, Inc.,* No. C 16-03581 WHA, 2017 WL 5495816, at *8 (N.D. Cal. Nov. 16, 2017) (Judge Alsup awarded 27% of the total recovery); *Morris v. Fid. Investments,* No. C 17-06027 WHA, 2019 WL 4040069, at *4 (N.D. Cal. Aug. 26, 2019) (Judge Alsup finding a recovery of 25% of the net settlement fund as fair, adequate); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 861 (N.D. Cal. 2017) (Judge Alsup ordered that class counsel was entitled to 25% of the common fund finding the litigation was not especially risky or complex); *Richardson v. Interstate Hotels & Resorts, Inc.,* No. C 16-06772 WHA, 2019 WL 803746, at *5 (N.D. Cal. Feb. 21, 2019) (Judge Alsup finding that 29% of the *net* settlement fund and 25% of the *gross* settlement fund was reasonable and fair.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D. **Class Counsel Achieved an Outstanding Result for the Class**

In determining whether a fee award is reasonable, the most critical factor is the degree of success obtained; i.e., the overall result and benefit to the class from the litigation. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Destefano v. Zynga, Inc.,* No. 12-cv-04007-JSC, 2016 WL 537946, at *9 (N.D. Cal. Feb. 11, 2016). As explained in further detail in Plaintiff's motion for preliminary approval, the amount offered in the Settlement demonstrates that this Settlement is an excellent result for both the Class and the Defendant, considering the risks, and the recovery substantially outperforms similar TCPA cases.

In the TCPA cases generally considered to be the strongest at the per-class member level, individuals receive calls or text messages from companies with whom they have no prior relationship, and claiming class members have traditionally recovered less than $200 each. *See, e.g., Kramer v. Autobytel, Inc.*, No. 10-cv-2722, ECF No. 148 (N.D. Cal. Jan. 27, 2012) (cash payment of $100); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-484, ECF No. 93 (N.D. Ill. Dec. 18, 2008) ($150 payment); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893, Dkt. No. 132 (N.D. Cal. Aug. 6, 2010) ($175 payment).

In cases like this one, where the class members have an existing relationship with the caller, recoveries are typically even more paltry. *See, e.g., Capital One*, 80 F. Supp. 3d at 790 ($34.60 per claiming class member); *Wright v. Nationstar Mortgage LLC*, No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claiming class member); *Rose v. Bank of Am. Corp.*, No. 11-cv-2390 (N.D. Cal.) ($20 to $40 per claiming class member); *Wilkins v. HSBC Bank Nevada, N.A.,* No. 14-cv-190 (N.D. Ill. Feb. 27, 2015) ($93.22 per claiming class member).

Here, Plaintiff recovered a Settlement Fund based on a gross recovery of $375.00 per Class Member, which is 75% of the reasonable potential recovery per violation.  Each Class Member will receive, without the need to submit a claim form, their *pro rata* share of the Settlement, net of attorneys' fees and expenses, an incentive award to the Plaintiff, and settlement administration costs.  This amount is averaged to be approximately $280.  Every

Class Member who has not opted out will receive a check from the Settlement Administrator-- again no claim forms needed.  Any balance remaining after the initial distribution (due to uncashed checks) will be redistributed to Class Members on a pro rata basis.  (Settlement Agreement ¶ 13.01.)  If the amount is less than $10 per Class Member, the remaining funds will be paid out to the *cy pres* recipient who, with this Court's approval, is CTIA.  (*Id.*)

### E. __The Action Involved Significant Risks__

Although Class Counsel prevailed on the vast majority of contested issues, this litigation was always risky. Uncertainty that an ultimate recovery would be obtained is a factor in determining risk. *Saechao v. Landrys, Inc.*, No. C 15-00815 WHA, 2016 U.S. Dist. LEXIS 111660, at *5 (N.D. Cal. Aug. 19, 2016). "Moreover, when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Destefano*, 2016 WL 537946, at *18.

In addition to the "normal" risks of litigation, much less contingency litigation, there was risk that SmartPay would prevail on several of its defenses to the merits of the case including (a) that the use of the word "STOP" in a text message does not mean that the consumer was requesting an opt-out; (b) that class members re-consented by entering into separate contracts with Defendant containing consent disclosures during the class period; (c) that certain class members whose leases had not terminated or whose lease contracts contained arbitration agreements must pursue their claims in individual arbitrations; or (d) that Defendant served as a wireless carrier for at least some portion of the class, potentially affording it a right to communicate with class members on their phones without consent.

Class Counsel also faced a substantial risk of non-recovery on the issue of whether SmartPay used an ATDS to send the text messages at issue. The risks posed by this argument are best exemplified by the Eastern District of Pennsylvania's decision on remand from the Third Circuit in *Dominguez v. Yahoo!, Inc.* There, the Court granted summary judgment in the defendant's favor after finding that the plaintiff failed to establish that the

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Class Counsel's Notice and Motion for Attorneys' Fees, Costs, and Incentive Award

defendant's email-to-text-message system lacked the ability to "both generate random/sequential numbers <u>and</u> call them," rather than calling a particular set of user-provided telephone numbers. *Dominguez v. Yahoo!, Inc.*, No. 13-cv-1887, 2017 WL 390267, at *21 (E.D. Pa. Jan. 27, 2017) (emphasis in original).

Finally, Class Counsel accepted substantial regulatory risk in taking this case as well, given the very real "possibility that the FCC would take action that might extinguish Plaintiffs' claims." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 805 (N.D. Ill. 2015). This same risk has been identified in other TCPA cases awarding higher risk premiums than that sought here, *see id.*; *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502-503 (N.D. Ill. 2015) , and it was a real risk here. Recently, the FCC issued an order addressing the definition of ATDS and "called party" under the statute and creating a one-time safe harbor for calls to the wrong number, only for that order to be partially invalidated on review by the D.C. Circuit. *See ACA Int'l v. Fed. Commc'ns. Comm.*, 885 F.3d 687 (D.C. Cir. 2018). With the meaning of ATDS arguably being in flux throughout the pendency of the litigation, and with a variety of opinions existing regarding the application of that definition to technology like SmartPay's, it is certainly safe to say that Class Counsel faced substantial risk of non-recovery due to FCC action (or judicial review thereof).

Thus, there can be little question that Plaintiff faced real risks in prevailing on her claims and maintaining certification through trial.

## F. **The Litigation Required a High Degree of Skill and Quality of Work**

### (a) **Class Counsel's Experience and Skill**

Class Counsel's skill and persistence achieved a good result for the Class – higher than most other recent TCPA class actions on a per-Class member basis. Senior Associates Alexis M. Wood and Kas L. Gallucci specialize in prosecuting TCPA class actions alongside their Partner Ronald. A. Marron. Together, as a team, Class Counsel has litigated numerous TCPA class actions and obtained over $30 million in relief. Most recently, on October 11, 2019, the Honorable Judge Wilhelmina M. Wright granted final approval to a

nationwide TCPA class action that created a common fund of $5.25 million for 688,561 persons.  *See* Marron Decl., Ex. 1.

### (b)   Defense Counsel's Experience and Skill

SmartPay was represented by Partner Jeffrey A. Topor and Associate Liana Mayilyan of Simmonds & Narita LLP throughout the pendency of the lawsuit.  The attorneys at Simmonds & Nartia specialize in defending clients against claims brought under the TCPA, including putative class actions, to which they devote a substantial portion of their practice to.  *See* https://www.snllp.com/san-francisco-law-firm/practice-areas/.  Mr. Topor has tried cases before juries in state and federal court, and has represented defendants against other TCPA putative class action cases filed by the Law Offices of Ronald A. Marron.  Prior to Mr. Topor's work at Simmonds & Narita, he was associated with a national complex litigation firm where he litigated consumer class actions, resulting in settlements worth nearly $1.3 billion.  *See* https://www.snllp.com/san-francisco-law-firm/attorneys/jeffrey-topor.  In preparation of trial, SmartPay retained additional counsel, Partner Eric J. Troutman and Associate Emily Lee Wallerstein of Squire Patton Boggs (US) LLP.  Mr. Troutman is a well-known TCPA class action defense attorney, serving as defense counsel in more than 70 nationwide TCPA class actions. https://www.squirepattonboggs.com/en/professionals/t/troutman-eric-j.  Mr. Trotman is an avid TCPA blogger, most recently maintaining the TCPAWorld blog, which is likely the most used TCPA blog by attorneys and consumers alike.  *See* https://tcpaworld.com/.

Throughout the pendency of the lawsuit, SmartPay's counsel vigorously defended against Plaintiff's putative class action claims by filing many motions and objecting zealously to Plaintiff's discovery.  Specifically, Defendant filed a motion to compel arbitration, an appeal to the Ninth Circuit regarding the order denying arbitration, a motion to stay the district court proceedings pending Defendant's appeal, a motion for leave to file a motion for reconsideration when the stay was denied, and a motion to stay case in response to Plaintiff's motion for class certification.  While Defendant lost each of these motions, the

14

briefing, from both sides, was well-reasoned and persuasive.   Additionally, Defendant staffed this case with at least two attorneys (one partner and one associate or two partners) at nearly every meet and confer, hearing and deposition, so in response two attorneys from Plaintiff's side worked the case (typically two senior associates or one partner and one senior associate).   SmartPay also had in-house counsel that attended depositions and mediation.

G. **The Contingent Nature of the Fees, and Burden of Costs, Supports the Fee Award**

Determining an attorneys' fees award requires a court to take into account the contingent nature of the fee and the difficulties overcome (see above) in obtaining a settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. [ ] Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. [ ] As the court observed in [ ], "if this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

*WPPSS*, 19 F.3d at 1299-1300. Similarly, in *Birch v. Office Depot Inc.,*., the court found that

> Class Counsel has proceeded on a contingency basis despite the uncertainty of any fee award. Class Counsel risked that it would not obtain any relief on behalf of Plaintiff or the Class, and so no recovery of fees. In addition, Class Counsel was precluded from pursuing other potential sources of revenue due to its prosecution of the claims in this action.

15

No. 06 CV 1690 DMS (WMC), 2007 WL 9776717, at *2 (S.D. Cal. Sep. 28, 2007). The sheer number of hours that Class Counsel invested in this Action evidences other foregone opportunities. Because Class Counsel were working entirely on a contingency basis, only a successful result –at trial or by settlement – would result in any fees. Nevertheless, Class Counsel spent over a thousand hours to zealously promote the Class's interests. The contingent nature of Class Counsel's representation strongly favors approval of the requested fee.

### H. Class Reaction Supports Approval of the Requested Attorneys' Fees Award

At present, Direct Postcard Notice has been delivered to 18,020 Class Members, and not a single Class Member has opted-out or objected.  (Heffler Decl., ¶ 9). Heffler is in the process of notifying the remaining Class Members and counsel will file an additional declaration regarding Notice with the Motion for Final Approval.  Because this motion is being filed approximately four weeks before the deadline for filing objections, objections may be filed, but little opposition to the fee request, incentive payment or to the settlement itself is expected.  Thus, the response to date shows an overwhelming support for the settlement and confirms the fee award sought is supported by the Class.

### I. Lodestar Cross-Check Supports the Requested Attorneys' Fees Award

The Court may apply a lodestar cross-check – measuring lawyers' hourly rates multiplied by hours expended – to ensure that a fee award that is a percentage of a common fund is reasonable. For example, where minimal investment of fee-hours generates an enormous windfall relative to the lodestar, the Court may find that a lower percentage is reasonable. On the other hand, a Court may use a lodestar cross-check to award a higher percentage if the benchmark yields a low attorneys' fees award based on fee-hours. *Vizcaino*, 290 F.3d at 1050- 51. This is not to say that the fee award must equal the 25%

benchmark; indeed, the *Vizcaino* court approved – over objections – a fee award that was 3.65 times the lodestar. *Id.*

Class Counsel's lodestar, excluding the filing of this Motion for Fees and upcoming Final Approval, is $914,301.50.  The hourly billing rates are Class Counsel's customary rates, and Class Counsel believe their rates are in line with – or lower than – prevailing rates in California for lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Class Counsel divided work so as to prevent duplication of effort, and litigated this Action efficiently and effectively for the Class. All of the hours Class Counsel spent on this case were reasonable and necessarily incurred as part of their zealous representation of the Class's interests.

Percentage awards in the range of one to four times the lodestar are common. *Vizcaino*, 290 F.3d at 1051- 51 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing *In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.")

The class action settlement in the matter *Luna v. Marvell Tech. Grp*., Judge Alsup found a multiplier of 2 reasonable with the following analysis.

> No summary judgment motion was filed and the case did not go to trial. Nonetheless, since this action began in 2015, lead counsel spent more than 13,000 hours litigating the case without compensation and with some risk of no fees. Because counsel worked on a contingent-fee basis despite risks of litigation, this weighs in favor of awarding more than the lodestar. So does the skill required and the quality of work performed by lead counsel in this case.

No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018).  In *Etter v. Allstate Ins. Co.*, No. C 17-00184 WHA, 2018 WL 5791883, at *5 (N.D. Cal. Nov. 4, 2018),

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Class Counsel's Notice and Motion for Attorneys' Fees, Costs, and Incentive Award

a TCPA case, Judge Alsup similarity found a multiplier of 2.53 appropriate.   Thus, here, Class Counsel request that Plaintiff's multiplier of 2.3 is also found fair and reasonable.

## IV.   COSTS

Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are eligible for reimbursement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Here, Class Counsel request a cost award of $32,081.58, as summarized below and detailed in the accompanying Declaration of Ronald A. Marron at ¶ 50.

| | |
|---|---|
| COURT FILING FEE FOR COMPLAINT: | $400.00 |
| EXPERT FEES: | $14,880.00 |
| PROCESS SERVER FEES FOR SERVICE OF COMPLAINT ($41), SUBPOENAS, AND LIMITED PARTY DISCOVERY ($165.82): | $206.82 |
| COURT REPORTER TRANSCRIPT FEES FOR 6 DEPOSITIONS AND ONE HEARING: | $6,123.29 |
| YEARLY SUBSCRIPTION TO CELLPHONE BLOCK IDENTIFIER AND PORTED NUMBER LISTS (billed for only one year) | $2,795.00 |
| THIRD PARTY SERVICE FOR PREPARING AND DELIVERING COPIES OF APPEAL BREIFING TO COURT: | $239.90 |
| POSTAGE (GSO and USPS): | $230.79 |
| COACH FLIGHTS TO 8 HEARINGS AND 6 DEPOSITIONS: | $4,899.68 |
| UBERS/LYFTS TO/FROM AIRPORT/HOTEL/OFFICE, HEARINGS, DEPOSITIONS AND MEDIATION: | $1,251.21 |
| HOTELS FOR 8 HEARINGS AND 2 DEPOSITIONS: | $4, 336.67 |
| MEALS DURING TRAVEL: | $469.23 |
| WIFI CHARGES WHILE TRAVELING | $37.41 |
| DEADLINES.COM: | $280.00 |
| IN HOUSE COPIES: | $268.25 |

Moreover, Direct Notice sent to the Class and posted on the Settlement Website advise Class Members that Class Counsel will seek reimbursement of costs not to exceed $60,000. *See* Dkt. No. 103-2 at 38-39. The Direct Notice also advised that the Claims Administration would not exceed $75,000, which is separately being sought. *Id*. All of Class Counsel's expenses were reasonable and necessary for the successful prosecution of this case. Accordingly, the Court should grant Class Counsel's full request for reimbursement of their costs.

## V.   <u>INCENTIVE AWARD</u>

This Court may and should compensate the appointed Class Representative, Shawn Esparza, for her effort that led to a good result for the Class. "[A] class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Similarly,

> Incentive awards are fairly typical in class action cases. [ ] Such awards are discretionary, [ ], and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). Thus, an incentive award promotes the larger public interest in encouraging potential class representatives to step up and seek to benefit society as a whole.

Class Counsel are aware that this Court's Order re: Factors for Class Settlement (Dkt. No. 11) states at § 12 that incentive awards are "red flags" because they are "too often simply ways to make a collusive or poor settlement palatable to the named plaintiff." However, in *McLaughlin v. Wells Fargo Bank, N.A.,* No. C 15-02904 WHA, 2017 WL 994969, at *5 (N.D. Cal. Mar. 15, 2017), Judge Alsup awarded the class representative

19

$3,000 as an appropriate award for service on the case. Similarity, in *Richardson v. Interstate Hotels & Resorts, Inc.,* No. C 16-06772 WHA, 2019 WL 803746, at *5 (N.D. Cal. Feb. 21, 2019) Judge Alsup awarded the class representative $2,000. Judge Alsup also approved a $500 incentive award for the named plaintiff in *Etter. See Etter*, 2018 WL 5791883, at *4.

Class Counsel requests a modest incentive award for Ms. Esparza based on the amount of time and effort she devoted to this Action, and the benefit provided to the Class. In response to the receipt of unsolicited text messages she could not opt out of, Ms. Esparza sought experienced TCPA counsel to prosecute her case. Ms. Esparza provided copies of the text messages she received and produced documents, reviewed the complaint and various pleadings drafted by her attorneys, responded to substantial written discovery, including providing supplemental responses, and prepared for and sat for a deposition. Plaintiff also submitted a declaration in support of her motion for class certification and discussed strategy with class counsel. Esparza Decl. at ¶ 3.

Ms. Esparza's participation led to a $8,679,000.00 gross recovery for the Class and a change in policy going forward to prevent unwanted text messages. Here, the requested $2,500 for Ms. Esparza divided across 23,144 Class members reduces each Class member's award by just less than 10 cents. This seems eminently reasonable, since Class members would likely not be receiving anything at all but for Ms. Esparza stepping up to pursue this Action. Accordingly, Class Counsel believe that an incentive payment (or, alternatively, framed as compensation for Ms. Esparza's time spent representing the class) of $2,500 is justified. *See In re Charles Schwab Corp. Sec. Litig.,* No. C 08-01510 WHA, 2011 WL 1481424, at *9 (N.D. Cal. Apr. 19, 2011) (These are not "incentive" fees. Rather, they are compensation for the many hours the lead plaintiffs spent representing the class.)

## VI. CONCLUSION

Class Counsel filed and zealously pursued this Action on a contingency basis, assuming significant risk. Class Counsel invested over a thousand hours of time and

incurred $32,081.58 in litigation costs, with no guarantee of ever seeing a return, as they sought to bring Defendant to justice and obtain recovery for the Class. The litigation was hard-fought, and Class Counsel prevailed in critical motions to the Court and the Ninth Circuit that brought about the best Settlement that could be achieved for the Class.

Class Counsel request $2,142,354.60 for attorneys' fees (25% of the net settlement fund), which represents a reasonable multiplier of 2.3. Class Counsel also request an award of $32,081.58 for costs they personally incurred, and an incentive award of $2,500 for Ms. Esparza.

These sums are justified and deserved, and the Court should grant the Motion in all respects.

Dated:      November 21, 2019      By: */s/ Ronald A. Marron*
                                   **LAW OFFICES OF RONALD A. MARRON**
                                   RONALD A. MARRON
                                   ALEXIS M. WOOD
                                   KAS L. GALLUCCI
                                   651 Arroyo Drive
                                   San Diego, California 92103
                                   Telephone: (619) 696-9006
                                   Facsimile: (619) 564-6665

                                   *Class Counsel*

21