1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ESPARZA, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMARTPAY LEASING, INC.,<br><br>Defendant. | Case No.: 17-cv-3421-WHA<br><br>**PLAINTIFF'S NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**<br><br>Hearing Date:    January 16, 2020<br>Hearing Time:    11:00 a.m.<br>Judge:          Hon. William Alsup<br>Courtroom:       12 – 19th Floor |

### NOTICE OF MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

On January 16, 2020 at 11:00 a.m., in Courtroom 12 – 19th Floor of the Honorable William Alsup, Plaintiff Shawn Esparza ("Plaintiff") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order granting final approval of the class action settlement, for which this Court granted preliminarily approved on September 12, 2019 (Dkt. No. 104).

The basis for this Motion is that the proposed settlement was negotiated at arm's-length; is not collusive; is fair, adequate, and reasonable; and is in the best interests of the Certified Class. The approved class administrator, Heffler Claims Group ("Heffler") provided notice to the Certified Class by U.S. mail to Class Members' last-known addresses and for undeliverable addresses, performed skip-tracing to located updated addresses, and thereafter attempted to email Class Members, to provide the best notice practicable under the circumstances in compliance with Rule 23(e) and due process. None of the 23,144 Cass Members opted out.[1]  No Class Members filed objections by the Court-ordered deadline of December 16, 2019. This $8,679,000 lump-sum settlement provides an estimated $278 to each Class Member net after fees, costs, and an incentive award, and without requiring the filing of claim forms, assuming the Court grants Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Award (Dkt. No. 106). The Settlement Fund is non-reversionary; the proposed *cy pres* recipient, CTIA, www.ctia.org, is an organization that promotes best practices for text messages and recommendations on how to be TCPA compliant.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ronald A. Marron, the Declaration of Heffler Claims Group, the pleadings and papers on file in this action, and any oral and documentary

---

[1] Thirty-Two Class Members have not received Notice, thus the Class releasing claims consists of 23,112 individuals.

ii

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Plaintiff's Notice and Motion for Final Approval of Class Action Settlement

1    evidence that may be presented at the hearing on the motion.

2

3    Dated: December 16, 2019          By: */s/ Ronald A. Marron*
4                                      **LAW OFFICES OF RONALD A. MARRON**
5                                      RONALD A. MARRON
                                        ALEXIS M. WOOD
6                                      KAS L. GALLUCCI
                                        651 Arroyo Drive
7                                      San Diego, California 92103
                                        Telephone: (619) 696-9006
8                                      Facsimile: (619) 564-6665
9
                                        *Class Counsel*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED ............................................... 2

III. BACKGROUND ................................................................................................ 2

    A.    Summary of Claims ................................................................................ 2

    B.    Procedural History ................................................................................. 3

    C.    Mediation .............................................................................................. 6

IV. TERMS OF THE SETTLEMENT .................................................................. 6

    A.    The Class ............................................................................................... 6

    B.    Monetary Relief to Class Members ...................................................... 7

    C.    Cy Pres .................................................................................................. 7

    D.    Opt-Outs ................................................................................................ 7

    E.    Objections ............................................................................................. 7

    F.    Release .................................................................................................. 7

    G.    Attorneys' Fees, Costs and Incentive Award ....................................... 8

V. THIS SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ........................................... 8

VI. NOTICE TO THE CLASS WAS ADEQUATE .......................................... 10

VII. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......................................................................................................... 13

    A.    The Class Representative and Class Counsel Have Adequately Represented to the Class ..................................................................................................... 14

        1.    *Plaintiff Prevailed on Defendant's Appeal to the Ninth Circuit.* ....... 14

        2.    *Plaintiff Prevailed on her Motion to Certify her "STOP" Text Message Class.* .................................................................................. 15

    B.    The Settlement was Negotiated at Arm's Length ............................... 16

    C.    The Relief for the Class is Adequate ................................................... 17

*Esparza v. Smartpay Leasing, Inc.* CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

VIII. TIMELINE ................................................................................................................. 20

XI.    CONCLUSION ......................................................................................................... 21

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## TABLE OF AUTHORITIES

**Cases**

*Arnold v. Fitflop USA, LLC*,
  No. 11-CV-0973 W (KSC), 2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) .............14

*Bayat v. Bank of the W.*,
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) .....................19

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)...................................................................19

*Cabiness v. Educ. Fin. Sols., LLC*,
  No. 16-CV-01109-JST, 2019 WL 1369929 (N.D. Cal. Mar. 26, 2019)..................18

*Campbell-Ewald Co. v. Gomez*,
  126 S. Ct. 663 (2016)...............................................................................3

*Charvat v. Allstate Corp.*,
  29 F. Supp. 3d 1147 (N.D. Ill. 2014) .........................................................3

*Class Plaintiff v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..........................................................10, 19

*Estrada v. iYogi, Inc.*,
  No. 2:13–01989 WBS (CKD), 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)..........18

*Etter v. Allstate Ins. Co.*,
  No. C 17-00184 WHA, 2018 WL 5761755 (N.D. Cal. May 30, 2018) ..................17

*Franklin v. Wells Fargo Bank, N.A.*,
  No. 14-cv-2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ..........18

*Grannan v. Alliant Law Grp., P.C.*,
  No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012)........................19

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ...................................................................................8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................8, 10, 14

*Harris v. Amgen, Inc.*,
   No. CV 07-5442 PSG (PLAx), 2016 WL 7626161 (C.D. Cal. Nov. 2016) .......13, 19

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .....................17

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA)*
   *Litig.*, 772 F.3d 125 (2d Cir. 2014) ........................................................................11

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV 01-275 DT (MLGx), 2005 WL 8152913 (C.D. Cal. Sep. 14, 2005) .....20

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................................9

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ..................................................................................8

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   No. MDL C-07-1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)..........10

*Low v. Trump University, LLC*,
   881 F.3d 1111 (9th Cir. 2018) ................................................................................11

*Luna v. Marvell Tech Grp.*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ..................11

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ................................................................................11

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ............................................................................11

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ................................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .........................................................9, 18

*Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC(MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014).20

*Officers for Justice v. Civil Service Com'n of City & Cnty. of San Francisco*,
   688 F. 2d 615 (9th Cir. 1982) ................................................................9

*Pimental v. Google Inc.*,
   No. 11-CV-02585-YGR, 2013 WL 12177158 (N.D. Cal. June 26, 2013)..............19

*Rodriguez v. Bumble Bee Foods, LLC*,
   No. 17cv2447-MMA (WVG), 2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) .........13

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................16

*Satchell v. Fed. Express Corp.*,
   No. C032659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)............................17

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ...................................................14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................13

*Wilkins v. HSBC Bank Nevada, N.A.*,
   No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015).....................................18

*Wright v. Nationstar Mortgage LLC*,
   No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016).............................18

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th Ed.
   2002) ................................................................................................10

1

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................10

Fed. R. Civ. P. 23(e).................................................................................8, 9

Fed. R. Civ. P. 23(e)(1).............................................................................10

*Esparza v. Smartpay Leasing, Inc.* CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

## I.  INTRODUCTION

Plaintiff and Class Representative Shawn Esparza ("Plaintiff") request the Court grant final approval of the proposed settlement of this certified class action for $8,679,000 settling the claims of Plaintiff and the Class brought against Defendant SmartPay Leasing, Inc. ("Defendant" or "SmartPay") for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  On June 5, 2019, the Court certified a Class of "All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word 'STOP.'" Dkt. No. 89.  Thereafter, the Parties reached a settlement during a full day mediation before Hon. Leo Papas (Ret.) of Judicate West, and on September 12, 2019, the Court granted preliminary approval of the settlement and approved the proposed form of notice. Dkt. No. 104.  Notice dissemination began on October 16, 2019, which included Direct Notice and access to the Settlement Website and Toll-Free Number. Response to the settlement has been overwhelmingly positive: no Class Members have elected to opt-out and no Class Members have objected.

Plaintiff now moves the Court for final approval of the Settlement.  The proposed Settlement meets and exceeds Rule 23(e)'s requirements because the Settlement is fair, adequate, and reasonable.   The Settlement will compensate 23,112[2] persons for the unsolicited text messages they received from Defendant.  The Settlement avoids further litigation that would expose the Class to various legal and practical risks.  The Settlement

---

[2] At present, and as discussed in detail below, Notice was undeliverable to 32 members of the Class.  While the Class originally consisted of 23,144 persons because Notice was not delivered to 32 persons, their claims are specifically not waived and they will not receive monetary relief from the Settlement.

1

was achieved only after hard-fought litigation, an appeal to the Ninth Circuit, mediation, extensive negotiations and development of a comprehensive notice plan. The Settlement proceeds will be divided equally among Class Members, net of notice costs, attorneys' fees, litigation expenses and an incentive award. Currently, after subtracting the attorneys' fees and costs and the incentive award to the Class Representative – which are subject to this Court's approval - as well as the administrative costs from the Settlement Fund, each Class Member will receive a check for approximately $278. This represents a significant recovery for Class Members. The strength of this settlement is further evidenced by the fact that there were no objections to the settlement, and not a single Class Member elected to opt-out. Given this excellent result, Plaintiff respectfully requests that this Court finally approve the settlement, and enter a final judgement and order in the form agreed to by the Parties.

## II. STATEMENT OF ISSUES TO BE DECIDED

1.    Did the Court-approved notice plane satisfy the requirements of Federal Rule of Civil Procedure 23(e)(1) and due process?

2.    Is the proposed Settlement Agreement fair, adequate, and reasonable to Class Members?

## III. BACKGROUND

### A.    Summary of Claims

The TCPA, enacted by Congress in 1991, combats the threat to privacy being caused by certain automated practices, stating it is unlawful:

"(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . (iii) to any telephone number assigned to a … cellular telephone service …"

47 U.S.C. § 227(b)(1)(A)(iii).

Thus, the TCPA prohibits calls made with an artificial or prerecorded voice or through an automatic telephone dialing system ("ATDS"). 47 U.S.C. § 227(a)(1). "A text

2

message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 126 S. Ct. 663, 667 (2016). Thus, Plaintiff need only prove that SmartPay (1) placed a call using an ATDS or an artificial or prerecorded voice; (2) to a cell phone number. *Id.* at § 227(b)(1)(A)(iii). Consent is an affirmative defense for which SmartPay bears the burden of proof. *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) ("[P]rior express consent under the TCPA is an affirmative defense on which the defendant bears the burden of proof.") (internal quotations omitted). The TCPA sets statutory damages at $500 per violation and $1,500 per willful or knowing violation, and also provides for injunctive relief. 47 U.S.C. § 227(b)(3)(A-B).

Here, Plaintiff alleged the receipt of unsolicited text messages from Defendant after requesting such messages "stop." After extensive discovery, including written, oral and third-party discovery, the Parties agreed that the text messages Plaintiff received were the result of a coding error in Defendant's platform that allowed text messages to continue after receipt by Defendant of a "stop" message.  Like Plaintiff, Class Members each received text messages from Defendant after texting the word "STOP" to Defendant.

In response to Plaintiff's claims, Defendant maintained various defenses, any one of which could have derailed Plaintiff's and the Class's claims at summary judgment or at trial.  Specifically, Defendant alleged and maintained that: (1) the use of the word "STOP" in response to a text message did not mean that the consumer was requesting an opt-out; (2) that Class Members re-consented to receive text messages by entering into separate contracts with Defendant containing consent disclosures; (3) certain Class Members whose leases were still active or contained valid arbitration agreements were required to pursue their claims in individual arbitrations; and (4) that the text messages were sent using equipment that did not qualify it as an ATDS covered by the TCPA.

**B.    Procedural History**

Plaintiff filed her putative class action Complaint on June 13, 2017, alleging that Defendant violated the TCPA.  (Dkt. No. 1.)  On July 28, 2017, Defendant filed a Motion

3

*Esparza v. Smartpay Leasing, Inc.* CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

to Compel Arbitration. (Dkt. No. 19.) Defendant's motion argued that Ms. Esparza's claims were encompassed by an arbitration agreement and she was required to participate in mandatory binding arbitration to resolve any claims or disputes on an individual, non-class basis. (Dkt. No. 19.) After full briefing and oral argument, this Court ruled that the arbitration agreement did not encompass Ms. Esparza's claims, and denied Defendant's motion. (Dkt. No. 33.) On October 24, 2017, SmartPay filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit. (Dkt. No. 37.) On November 1 2017, SmartPay filed an Answer. (Dkt. No. 40.)

On November 14, 2017, SmartPay filed a Motion to Stay District Court Proceedings Pending Appeal. (Dkt. No. 41.) After briefing and oral argument, this Court denied a stay, but limited discovery to that concerning the named Plaintiff only. (Dkt. No. 47.) Following the order, the Parties engaged in discovery, which included the depositions of SmartPay's Federal Rule of Civil Procedure 30(b)(6) witness and four additional party witnesses and the deposition of Plaintiff. Additionally, the Parties briefed a discovery dispute specifically addressing the willfulness of Defendant's alleged TCPA violations, which was heard by this Court on April 17, 2018. (Dkt. No. 56.) The discovery dispute gave way to an order entered by this Court which required SmartPay to produce a list containing the date, time and phone number for each time the Help Text Message was sent simultaneously or within seconds of a "Stop" request during the relevant time period. (Dkt. No. 59.) Although SmartPay filed a Motion for Leave to File Motion for Reconsideration Regarding the Order (Dkt. No. 61), which was opposed by Plaintiff (Dkt. No. 62), the Court ultimately denied Defendant's motion (Dkt. 64) and Defendant complied with the Court's order (Dkt. No. 65.)

As to Defendant's appeal, after multiple conferences with the Ninth Circuit Mediation Office, on June 22, 2018, SmartPay filed its Opening Brief with the United States Court of Appeals for the Ninth Circuit and on September 24, 2018, Ms. Esparza filed her Answering Brief. SmartPay filed its optional Reply Brief on November 13, 2018.

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Although the case was originally set for oral argument, the case was submitted on the briefs on March 15, 2019.

Meanwhile, on December 20, 2018, despite the discovery limitation due to the pending appeal, Plaintiff filed her Motion for Class Certification. (Dkt. No. 73.) On January 9, 2019, Defendant filed a Motion to Stay the Case Pending the Ninth Circuit Court of Appeal's Ruling on the Constitutionality of the TCPA and the Resolution of the Petition for Writ of Certiorari in *Marks v. Crunch Fitness*. (Dkt. No. 76.) After full briefing on both motions and oral argument, on February 14, 2018, this Court denied Defendant's motion to stay pending decisions in *Gallion v. Charter Commc'ns, Inc*., 287 F. Supp. 3d 920 (C.D. Cal. 2018), and *Marks v. Crunch Fitness*, 904 F.3d 1041 (9th Cir. 2018), and held in abeyance a ruling on Plaintiff's Motion for Class Certification pending a resolution of the appeal denying Defendant's Motion to Compel Arbitration. (Dkt. No. 82.)

On March 21, 2019, the United States Court of Appeals for the Ninth Circuit issued its Memorandum affirming this Court correctly held that the TCPA claims in the case are not subject to the arbitration clause in the cell-phone lease agreement between Ms. Esparza and SmartPay. (Dkt. No. 85.) A formal mandate of the Ninth Circuit's ruling was issued on April 12, 2019. (Dkt. No. 87.) Thereafter, on April 30, 2019, the Parties filed a Joint Notice Re Parties' Intent to Mediate advising of an upcoming mediation session with Judge Leo S. Papas, Ret. of Judicate West on July 11, 2019, and requesting that the Court appoint Plaintiff's counsel as interim class counsel for the purpose of proceeding with mediation. (Dkt. No. 88.) Plaintiff requested, in the alternative, that the Court lift the current stay and issue an order on Plaintiff's Motion for Class Certification. (*Id*.)

On June 5, 2019, this Court issued an order on Plaintiff's Motion for Class Certification, certifying the following Class:

> "STOP" Text Message Class: All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

(Dkt. No. 89.)

Following certification, Plaintiff sent Defendant an extensive settlement demand and the Parties engaged in both preliminary and substantial settlement negotiations in preparation of mediation. Additionally, prior to the Court vacating all case deadlines, including expert dates, summary judgment and trial, Class Counsel worked diligently and aggressively to prosecute Plaintiff's and the Class's claims.

### C. Mediation

On July 11, 2019, the Parties participated in a full day mediation, that extended into after hours, with the Honorable Leo S. Papas (Ret.) of Judicate West, the conclusion of which the Parties reached a settlement for the certified "STOP" Text Message Class that provides a non-reversionary $8,679,000 Settlement Fund.

## IV. TERMS OF THE SETTLEMENT

The terms of the Settlement preliminary approved by the Court are set forth in full in the Settlement Agreement and are summarized briefly below:

### A. The Class

The Class is the Certified Class defined as:

All persons within the United States (i) to whose cellular telephone number (ii) SmartPay Leasing, Inc. sent a text message (iii) using its vendor Twilio, Inc.'s platform (iv) from September 29, 2015 to June 13, 2017, (v) after texting the word "STOP."

Excluded from the Class are SmartPay, its parent companies, affiliates or subsidiaries, or any entities in which such companies have a controlling interest; and any employees thereof; the judge or magistrate judge to whom the Action is assigned and any member of those judges' staffs and immediate families, and any persons who timely and validly request exclusion from the Class. (Agreement, §2.07.)[3]

---

[3] The Settlement Agreement is filed with the Court at Dkt. No. 103-2.

6

**B.    Monetary Relief to Class Members**

The $8,679,000 non-reversionary Settlement Fund will be used to pay Class Members, the costs of settlement administration, Plaintiff's counsels' attorneys' fees and reasonable litigation expenses, and an incentive award to Plaintiff, as approved by the Court. (Agreement, § 2.30.)  If any Settlement check is not cashed, the Parties agree that unclaimed funds from uncashed checks issued to Class Members shall be redistributed to the other Class Members who have cashed their checks, or if not feasible, paid as a *cy pres*. (Agreement, § 13.01.)

**C.    Cy Pres**

The Parties request that any *cy pres* award be made to CTIA, www.ctia.org, an organization that promotes best practices for text messages and recommendations on how to be TCPA compliant. (Agreement, § 2.12.)  The Court preliminary found CTIA to be an appropriate *cy pres* recipient.

**D.    Opt-Outs**

No Class Members have elected to opt-out of the Settlement.  At present, 32 Class Members have not received Notice, and thus are excluded from the Class.

**E.    Objections**

There have been no objections to the Settlement.  That, too, shows the Class Members overwhelmingly support the settlement.

**F.    Release**

In exchange for the relief described above, each Class Members who does not properly opt-out of the Settlement will release claims against the "Released Parties" for all claims, as of the date of the Final Approval Order, that relate to automated text messages pursuant to the Telephone Consumer Protection Act, 47 USC § 227 and parallel state law claims related to such text messages sent by SmartPay to Class Members during the Class Period. (Agreement, § 18.01.) At oral argument, the Parties clarified that in the situation were notice remains undeliverable even after the notice process outlined in the proposed

7

settlement agreement, said Class Members' claims are not waived.  Thus, the 32 Class Members that did not receive Notice are not releasing their claims.

### G. Attorneys' Fees, Costs and Incentive Award

The Settlement Agreement is not contingent on the outcome of any such request for attorneys' fees, costs or an incentive award.  Notice to the Class provided that Class Counsel will not seek an award of attorneys' fees greater than one-third the total Settlement Fund ($2,893,000) or costs of more than $60,000, and that Class Counsel will not seek an Incentive Award of more than $7,500 for the Class Representative.  However, Class Counsel is seeking less than the sums provided in the Notice at $2,142,354.60 in attorneys' fees, $32,081.58 in costs, and a $2,500 incentive for Plaintiff.  *See* Class Counsel's Motion for Attorneys' Fees, Cost and Incentive Award. Dkt. No. 106.

## V. THIS SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

"In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e)). The purpose of this Rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Id*. In evaluating a class action settlement, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Nevertheless, the District Court does not have the "ability to delete, modify, or substitute certain provisions." *Id*. at 1026. "The settlement must stand or fall in its entirety." *Id*.

Federal Rule of Civil Procedure 23 provides a court may approve a settlement on a finding that the Class received adequate notice (Fed. R. Civ. P. 23(e)(1)-(2)) and that the settlement is fair, reasonable and adequate, after considering whether:

8

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

In addition to the above factors under Rule 23, guidelines issued by this District require Class Counsel to include in their motion for final approval of the settlement: "information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement." *See* Procedural Guidance for Class Action Settlements (updated November 1, 2018 and December 5, 2018) at *https://www.cand.uscourts.gov/ClassActionSettlementGuidance*.

To determine whether a class action settlement should be finally approved, the Court should balance the continuing risks of litigation against the benefits afforded to the Class and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Com'n of City & Cnty. of San Francisco,* 688 F. 2d 615, 625 (9th Cir. 1982). Courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results. "In most situations, unless the settlement is clearly inadequate, its acceptable and approval are preferable to lengthy and expensive litigation

with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th Ed. 2002) (gathering cases). "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'" *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon*, 150 F.3d at 1027). The traditional means for handling claims like those at issue here – individual litigation – would require a massive expenditure of public and private resources and, given the relatively small value of each Class Member's claim, would be impractical. The Settlement achieves a substantial and certain recovery for the Class and avoids uncertain rulings and findings at summary judgment or at trial. Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Further, an analysis of the relevant factors in Rule 23 demonstrates that the Settlement merits the Court's final approval.

## VI. NOTICE TO THE CLASS WAS ADEQUATE

When approving a class action settlement, a district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

*Esparza v. Smartpay Leasing, Inc*. Case No. 17-cv-3421-WHA
Plaintiff's Notice Motion for Final Approval of Class Action Settlement

A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Low v. Trump University, LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018). ("'The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness'") (quoting *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig*., 772 F.3d 125, 132 (2d Cir. 2014)). The notice must also describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Luna v. Marvell Tech Grp*., No. C 15-05447 WHA, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 452 (E.D. Cal. 2013).

The Court approved the Notice which advises potential Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections to the Settlement and requests for exclusion from the Class, identifies contacts for additional information, and provides specifics regarding the date, time, and place of the Final Approval Hearing. Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

Furthermore, the Notice includes: (1) the estimated amount of the Settlement proposed to be distributed to the Class Members; (2) a statement indicating that Class Counsel intend to make an application for attorneys' fees and costs, and the maximum amount of fees and costs they will seek; (3) the name and address of Class Counsel and a toll-free telephone number set up by the Claims Administrator to answer Class Members' questions; (4) a brief statement explaining the reasons why the Parties are proposing the

11

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   Settlement; (5) the plan of allocation; and 6) a website dedicated to the Settlement

2   (www.SmartPayTCPAClassAction.com) with information and links to pertinent

3   documents.

4       Pursuant to this Court's Order Re Motion for Preliminary Approval of Class

5   Settlement (Dkt. No. 379), Heffler Claims Group ("Heffler"), the Class Administrator

6   mailed notice of proposed Settlement, by first class mail, to 23,144 class members on

7   October 16, 2019.  *See* Declaration of Scott M. Fenwick of Heffler Claims Group

8   Supporting Plaintiff's Motion for Final Approval of Class Settlement ("Heffler Decl.") at

9   ¶ 10.  Of the 23,144 notices mailed, 5,388 postcards were returned as undeliverable and

10  43 were returned with a forwarding address. *Id*. Heffler sent the 5,388 postcards returned

11  as undeliverable through the locator service LexisNexis and 4,746 updated addresses were

12  obtained and thereafter re-mailed. *Id*. at ¶ 11.  Of the 642 records in which addresses were

13  not located through LexisNexis, Heffler sent the addresses through TransUnion, a second

14  locator service, and 487 updated addresses were obtained and thereafter re-mailed.  *Id*.  Of

15  the 155 records in which addresses were not located through TransUnion, Heffler

16  conducted an additional Reverse Phone Lookup ("RPL") process in which 77 updated

17  addresses were obtained and re-mailed.  *Id*.  After the three levels of skip trace were

18  conducted, 78 records remained unlocated.  *Id*.  At the direction of Class Counsel, those

19  names were provided to the Defendant and Defendant provided email addresses for the 78

20  records in which no address was found.  *Id*.  Heffler then emailed a copy of the Summary

21  Notice to each of the 78 individuals.  *Id*.

22      Heffler received 17 bounce back emails from the 78 email notices sent.  Heffler

23  Decl., ¶ 12.  Once informed, Class Counsel requested that Defendant provide social

24  security numbers, to the extent available, for the purpose of Heffler conducting a more

25  narrow skip trace to identify address information for the 17 individuals. *Id*.  On December

26  12, 2019, Heffler received an additional 80 postcards returned as undeliverable.  *Id*. at ¶

27  13.  Heffler informed Class Counsel and Class Counsel requested that Defendant provide

28  email address for the additional 80 Class Members for the purpose of sending email notice.

12

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Id.* On December 13, 2019, Defendant provided email addresses for the 80 Class Member who did not receive postcard notice. *Id.* Heffler, thereafter, the same day, emailed a copy of the Summary Notice to each of the 80 Class Members. *Id.* Heffler received 15 bounce backs. Again, for these bounce backs, Class Counsel requested that Defendant provide social security numbers, to the extent available, for the purpose of Heffler conducting a more narrow skip trace to identify address information for the 32 total individuals. *Id.* However, as of current, the 32 individuals who did not receive notice will be excluded from the Class and their names are included on Exhibit A as excluded Class Member on the Order. Should additional contact information be located, and notice provided, a revised Final Approval Order will be provided prior to the hearing.

## VII. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Rodriguez v. Bumble Bee Foods, LLC*, No. 17cv2447-MMA (WVG), 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018). The Parties reached this Settlement after they had an opportunity to diligently investigate the relevant evidence through the exchange of thousands of relevant documents, data, and multiple depositions, and after the Court certified the Class.

In evaluating the fairness, reasonableness, and adequacy of a Settlement, courts consider the reaction of the Class. *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *Harris v. Amgen, Inc*., No. CV 07-5442 PSG (PLAx), 2016 WL 7626161, at *5 (C.D. Cal. Nov. 2016). The Settlement Notice advised the Class of the terms of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections and opting out of the Class. 23,144 Notice Packages were mailed to Class Members. While the objection deadline – December 16, 2019 – has not yet passed, not a single Class Member has filed an objection to the Settlement as of the date of this Motion. *See* Heffler Decl., ¶ 14. "[T]he fact that the overwhelming majority of the class willingly approved the offer

13

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Although recommendations of counsel proposing the Settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and discovery has commenced. Indeed, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016). Class Counsel are qualified and experienced in complex, class-action litigation, and believe that the Settlement is fair, adequate, and reasonable under the circumstances. *See* Marron Decl. at ¶ 6.

## A. **The Class Representative and Class Counsel Have Adequately Represented to the Class**

### 1. *Plaintiff Prevailed on Defendant's Appeal to the Ninth Circuit.*

On July 28, 2017, Defendant filed a Motion to Compel Arbitration. (Dkt. No. 19.) Defendant's motion argued that Plaintiff's claims were encompassed by an arbitration agreement and she was required to participate in mandatory binding arbitration to resolve any claims or disputes on an individual, non-class basis. (Dkt. No. 19.) After full briefing and oral argument, this Court issued on order on Defendant's Motion to Compel Arbitration finding that the arbitration agreement did not encompass Ms. Esparza's claims. (Dkt. No. 33.) On October 24, 2017, Defendant filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit. (Dkt. No. 37.)

Due to the Notice Appeal, on November 14, 2017, Defendant filed a Motion to Stay District Court Proceedings Pending Appeal. (Dkt. No. 41.) After briefing and oral

argument, this Court denied a stay, but limited discovery to that concerning the named Plaintiff only. (Dkt. No. 47.) As for as the Appeal itself, after multiple conferences with the Ninth Circuit Mediation Office, on June 22, 2018, SmartPay filed its Opening Brief with the United States Court of Appeals for the Ninth Circuit and on September 24, 2018, Plaintiff, through Class Counsel, filed her Answering Brief. SmartPay filed its optional Reply Brief on November 13, 2018. Although the case was originally set for oral argument, the case was submitted on the briefs on March 15, 2019.

On March 21, 2019, the United States Court of Appeals for the Ninth Circuit issued its Memorandum affirming Plaintiff's position and that this Court correctly held that the TCPA claims in the case are not subject to the arbitration clause in the terminated cell-phone lease agreement between Plaintiff and Defendant. (Dkt. No. 85.) A formal mandate of the Ninth Circuit's ruling was issued on April 12, 2019. (Dkt. No. 87.) This win by Plaintiff was instrumental in the Parties' subsequent Joint Notice Re Parties' Intent to Mediate filing which advised of an upcoming mediation session with Judge Leo S. Papas, Ret. of Judicate West on July 11, 2019. (Dkt. No. 88.)

### 2. *Plaintiff Prevailed on her Motion to Certify her "STOP" Text Message Class.*

After Plaintiff successfully defeated Defendant's appeal to the Ninth Circuit, Plaintiff successfully certified her "STOP" Text Message Class, potentially worth $1,500 per text message received by each Class Member. The Ninth Circuit's affirmation of this Court's order on the Motion to Compel Arbitration as well as the Certification of Plaintiff's TCPA claim was the primary motivation for Defendant to settle this action, as no percentage risk of loss at trial could be acceptable in the face of such a potential judgment.

Certification of the "STOP" Text Message Class necessitated a showing by common evidence that Defendant had sent text messages to Class Members after they had texted the word "STOP." To do so Class Counsel obtained and reviewed over a thousand pages of documents, deposed Defendant's 30(b)(6) witness, deposed three additional witnesses identified by Defendant as knowledgeable on certain topics, and engaged in meet-and-

15

confer sessions to pursue the discovery necessary to obtain the information to prove up Plaintiff's claims. *See* Marron Decl. ¶ 4.  During this discovery process, Plaintiff also sat for a deposition, received and produced documents, reviewed the complaint and various pleadings drafted by her attorneys, responded to substantial written discovery, including providing supplemental responses.  *Id*.  Additionally, Class Counsel served third-party discovery on Twilio, Inc., the dialing platform involved in the matter, which included many telephonic meet and confers and review of Twilio's documents produced in response to Plaintiff's Subpoena and publicly available on its website. *Id.*.

The greatest hurdle was receipt of the class list when Plaintiff was limited by a Court order allowing only individual discovery pending Defendant's appeal to the Ninth Circuit. (Dkt. No. 47). In order to gain access to the information, as Defendant refused to produce class data, Plaintiff filed a discovery dispute, which was heard by this Court on April 17, 2018.  (Dkt. No. 56.)  The discovery dispute gave way to an order entered by this Court which required Defendant to produce a list containing the date, time and phone number for each time the Help Text Message was sent simultaneously or within seconds of a "Stop" request during the relevant time period.  (Dkt. No. 59.)  Although Defendant filed a Motion for Leave to File Motion for Reconsideration Regarding the Order (Dkt. No. 61), which was opposed by Plaintiff (Dkt. No. 62), the Court ultimately denied Defendant's motion (Dkt. No. 64) and Defendant complied with the Court's order (Dkt. No. 65.)  After receipt of this information, Plaintiff was able to successfully move for class certification of her claims.  (Dkt. No. 73).

## B.    The Settlement was Negotiated at Arm's Length

Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

During the negotiations, Class Counsel zealously advanced Plaintiff's and the Class' positions and were fully prepared to continue to litigate and try the case rather than accept a settlement that was not in the best interest of the Class. With the assistance of Judge Leo

Papas, Ret., the Parties spent a full day discussing the merits and weaknesses of their respective positions. At the conclusion of the mediation, Defendant agreed to create a $8,679,000.00 non-reversionary settlement fund, equal to $375.00 per Class Member (23,144 in the Class), to pay Class Members, the costs of the settlement administration, attorneys' fee and reasonable litigation expenses, and an incentive award to the Plaintiff, as approved by the Court. *See* Marron Decl. ¶ 2. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the Settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C032659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Here, Judge Leo Papas, Ret played an active role in bringing about this Settlement.

### C.    <u>The Relief for the Class is Adequate</u>

Defendant will pay $8,679,000.00 into a non-reversionary settlement fund to resolve this matter—an amount that is significant in its own right. This case was at a stage that allowed the Parties to value it fairly.  The Parties had been litigating the case for over two years and had engaged in extensive written and oral discovery prior to Settlement.  *Etter v. Allstate Ins. Co*., No. C 17-00184 WHA, 2018 WL 5761755, at *2 (N.D. Cal. May 30, 2018) ("Given that this proposed settlement agreement comes after over a year of litigation, discovery, and motion practice, both sides have had ample opportunity to carefully assess and weigh the relative strengths and weaknesses of their legal position.")  Further, Plaintiff had served her expert report and a Class has already been certified.

The amount offered in the Settlement demonstrates that this Settlement is an excellent result for both the Class and the Defendant, considering the risks.  Here, Plaintiff recovered a Settlement Fund based on a gross recovery of $375.00 per Class Member, which is 75% of the reasonable potential recovery per violation.  *See Etter*, 2018 WL 5761755, at *2 (preliminary approval granted where plaintiff's gross recovery in a TCPA case represented 75% of the best possible outcome.)  Each Class Member will receive their *pro rata* share of the Settlement, net of attorneys' fees and expenses, an incentive award to

the Plaintiff, and settlement administration costs. Every Class Member will receive a check from the Settlement Administrator-- no claim form needed. Any balance remaining after the initial distribution (due to uncashed checks) will be redistributed to Class Members on a *pro rata* basis. If the amount is less than $10 per Class Member, the remaining funds will be paid out to the *cy pres* recipient who, with this Court's approval, is CTIA.

Although the TCPA provides for statutory damages of $500 for each violation (for a non-willful violation), it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop.*, 221 F.R.D. at 527 (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").

This recovery, however, is not a small percentage of the potential recovery and is thus an exceptional result for the Class, and compares favorably to other TCPA class action settlements. *See Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (based on class member participation, each member's pro rata share will be $33.36.); *Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-2349-MMA (BGS), 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received approximately $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD), 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (providing for payments of $34.60 to each claiming class member); *Wright v. Nationstar Mortgage LLC*, No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claiming class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($93.22 per claiming class member).

While it is true the Class would be entitled to additional funds if they were to fully recover for their claims, a settlement that attempts to compensate every member of the class is infeasible because "complete victory would most surely bankrupt the prospective

judgment debtor." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 790. Moreover, the costs of litigation would have substantially increased as the Parties wrapped up expert discovery and prepared for summary judgment and trial.

Further, because Class Members will not need to opt-in and notice has been provided to 99.86% of the Class as of the date of this Motion,[4] the high notice rate distinguishes this Settlement from other TCPA cases where the approved settlement provided each class member with a significant recovery, but a significantly smaller percentage of eligible class members actually filed a claim and obtained any relief. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5-6 (N.D. Cal. Apr. 15, 2015) ($151 for each class member who filed a claim, but only 1.9% of class filed a claim); *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) ($500 for each class member who filed a claim, but "only a small portion of the Settlement Class is expected to file claims"); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *4, *7 (N.D. Cal. Jan. 24, 2012) ($300-325 to each class member who filed a claim, but only 1,986 out of 137,891 class members, or 1.44%, filed a claim). Here, not only is there a significant recovery for each Class Member, but all Class Members will receive payment. Given the favorable terms of the Settlement and the rigorous manner in which the terms were negotiated, the relief for the Class is an adequate compromise of the issues in dispute.

The plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Amgen*, 2016 WL 7626161, at *5. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). An allocation plan need only have a reasonable, rational basis, particularly if

---

[4] Again, the 32 individuals who did not receive notice do not waive their claims and are included on the list of those excluded on the Final Approval Order.

19

*Esparza v. Smartpay Leasing, Inc*. CASE NO. 17-CV-3421-WHA
PLAINTIFF'S NOTICE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

recommended by experienced and competent class counsel. *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 WL 8152913, at *1 (C.D. Cal. Sep. 14, 2005); *Nguyen v. Radient Pharms. Corp.,* No. SACV 11-00406 DOC(MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

Every Class Member should receive approximately $278.  *See* Marron Decl., ¶ 2. The Claims Administrator will simply distribute checks in that amount to Class Members. As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Class Members. There have been no objections to the Plan of Allocation filed by Class Members, it is fair and reasonable, and this Court should approve it. As to individuals who did not receive either postcard or email notice, Heffler will not send checks to those individuals and those individuals will not be bound by the release. Those individuals are named in Exhibit A of the Final Approval Order.  Should Heffler locate additional addresses for the individuals by using social security numbers or additional undeliverables be received by Heffler to which no updated addresses or email addresses can be found, a revised Exhibit A will be provided.

Class Counsel has requested 25% of the net Settlement, or $2,142,354.60. *See* Class Counsel's Motion for Attorney's Fees (Dkt. No. 106). Class Counsel also requests $32,081.58 for costs that were a reasonable and necessary part of the litigation, and a $2,500 for incentive award for Plaintiff. *Id.*

## VIII. TIMELINE

Plaintiff asks this Court to order Defendant to make payment of the Settlement Fund per the Settlement Agreement. Heffler will thereafter mail checks for approximately $278 to each Class Member, for whom Heffler has a deliverable address, within 30 days of receipt of the $8,679,000.00 from Defendant. Class Members have 210 days from the day the last check was issued to deposit/cash the checks ("Distribution Period"). If, prior to the end of the Distribution Period, any Class Members for whom Heffler does not currently have a valid address provides an address, Heffler will mail them their checks, which must be deposited/cashed within the Distribution Period. Within 10 court days after the end of

the Distribution Period, Class Counsel will file a Declaration from Heffler stating: (a) compliance with the distribution order, (b) the number of checks deposited and not deposited, and (c) the amount of remaining funds to be distributed to CITA as the *cy pres* recipient.

## XI.   CONCLUSION

For all the foregoing reasons, the Settlement and Plan of Allocation warrant this Court's final approval.


Dated:        December 16, 2019        By: */s/ Ronald A. Marron*
                                       **LAW OFFICES OF RONALD A. MARRON**
                                       RONALD A. MARRON
                                       ALEXIS M. WOOD
                                       KAS L. GALLUCCI
                                       651 Arroyo Drive
                                       San Diego, California 92103
                                       Telephone: (619) 696-9006
                                       Facsimile: (619) 564-6665

                                       *Class Counsel*